J-S37027-15

2015 PA Super 159

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| FRANK CAPLE, | |
| Appellant | No. 2379 EDA 2014 |

Appeal from the Judgment of Sentence June 4, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002451-2013

BEFORE:  GANTMAN, P.J., SHOGAN, and LAZARUS, JJ.

OPINION BY SHOGAN, J.:                               **FILED JULY 24, 2015**

Appellant, Frank Caple, appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County.  After careful consideration, we vacate and remand.

The trial court summarized the procedural and factual history of this case as follows:

> A Criminal Complaint was filed February 16, 2013 against [Appellant], charging him with two counts of Possession with Intent to Deliver a Controlled Substance[1]; three counts of Possession of a Controlled Substance[2]; Possession of Drug Paraphernalia[3]; and Simple Assault[4]. After a 3-day jury trial, [Appellant] was found guilty of all charges on December 17, 2013.
>
> > [1] 35 P.S. § 780-113(a)(30) – One count of Possession with the Intent to Deliver Cocaine; and one count of Possession with Intent to Deliver Oxycodone.

[2] 35 P.S. §780-113(a)(16) - One count of Possession of Cocaine; one count of Possession of Oxycodone; and one count of Possession of Marijuana.

[3] 35 P.S. §780-113(a)(33)

[4] 18 Pa.C.S.A. §2701(a)(1)

The events leading to these charges began on February 16, 2013, at approximately 7:00 a.m. That day, Officer Jonathan Gallagher, was dispatched to America's Best Value Inn (hereinafter "the Inn") located in Pottstown, Montgomery County for a report of a domestic assault. Upon arriving at the Inn, Officer Gallagher joined two other officers and spoke with Yolanda Smith and Anthony King, who were occupying room 115. From this conversation, Officer Gallagher learned that an assault had just occurred. Neither Smith nor King was involved in the assault and they directed Officer Gallagher to room 210 of the Inn. However, the manager at the Inn indicated that room 210 was vacant. Since the victim was not located yet, Officer Gallagher asked the manager to open the door to room 210 nevertheless. It was apparent that room 210 was in fact vacant, but shortly thereafter, Officer Gallagher heard a radio transmission that the victim could possibly be located in room 215.

Officer Gallagher proceeded to room 215 and although the curtains were drawn, they were open enough that he could see there was a light on. He began to knock very loudly and announced "police" in his attempt to locate the victim. After doing this several times, to no avail, Officer Gallagher asked the manager to open the door. He then located a female, Gail Benedetto, in the bathroom. Ms. Benedetto was not the assault victim, however while he was in room 215, Officer Gallagher heard through transmission that the victim had been located.

Officer Gallagher noticed there were two metal crack pipes on top of a dresser in room 215. At that point, Ms. Benedetto was taken from the room in order to secure it while a search warrant was applied for. Found during the execution of the search warrant were: two cell phones located on the sink in room 215; a stack of business cards that said "Flip Entertainment," along with a telephone number printed on the cards; the two metal crack pipes mentioned earlier; a Western

Union receipt indicating Frank Caple sent $100 to Amber Fuller; a ceramic plate, razor blade, piece of a straw, blue pill bottle, small black glassine packaging baggies, and a bag of marijuana, all found in the desk drawer; a blue backpack containing men's clothing and two dirty socks with large chunks of a white substance inside; a black and orange backpack containing a pack of Newport cigarettes surrounded by unused pink and red Ziploc baggies; a red jacket with several small baggies that contained a white substance found inside; and a pair of men's Dickie pants with "Flip Company Home Remodeling" business cards sticking out of them. Testing done on several of the items seized and submitted to National Medical Services Laboratory provided a positive result for Cocaine, Oxycodone, and Marijuana.

While the search of room 215 was occurring, the victim of the assault, Cicely McCarty was taken to the police station. Officer Gallagher met her at the station and noticed her face was swollen, she had a cut on her lip, and she was upset. It was discovered that Ms. McCarty was doing drugs in room 115 and ended up sleeping there on the floor. The next morning, February 16, 2013, [Appellant] (identified as "Frank" or "Flip") called room 115 and told Ms. McCarty to leave. About two minutes later, [Appellant] came downstairs to room 115 and engaged in a verbal and physical fight with Ms. McCarty. As she left, Ms. McCarty called the cops. This call was what initially led Officer Gallagher to the Inn and resulted in the charges filed against [Appellant].

After [Appellant] was found guilty of all counts, he was sentenced on June 4, 2014. Due to the uncertainty of this Commonwealth's status on mandatory minimum sentences as a result of the Supreme Court's novel decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), this court entered a sentence that was comprised of two mandatory minimum sentences. However, recognizing that future decisions in this Commonwealth may change the constitutionality of [Appellant's] mandatory minimum sentence, we provided an alternate sentence.

Accordingly, we imposed the following sentence. For Count One – Possession with Intent to Deliver Cocaine, [Appellant] received a mandatory minimum sentence of 3 to 10 years due to the category of weight in which the jury indicated on the verdict slip; a consecutive 2 to 10 year mandatory

- 3 -

minimum sentence for Count Two - Possession with Intent to Deliver Oxycodone; and a concurrent 6 to 24 month sentence for Count Seven - Simple Assault. The court made a determination of guilt without further penalty for the Possession of Paraphernalia charge, and the three Possession of Controlled Substance charges merged for sentencing purposes.

We then issued the following alternative sentence in the event 42 Pa.C.S.A. §7508(a)(3)(ii) and §7508(a)(2)(i) were found to be unconstitutional. [Appellant] shall serve 21 to 120 months for Possession with Intent to Deliver Cocaine; and 18 to 120 months for the Possession with intent to Deliver Oxycodone charge. All other sentences would remain the same.

[Appellant] filed timely a Post-Sentence Motion on June 16, 2014, which was denied by this court on July 23, 2014. The instant Notice of Appeal was filed on August 19, 2014, which prompted this court to direct [Appellant] to produce a statement of issues in conformance with Pennsylvania Rule of Appellate Procedure 1925(b). [Appellant] has since complied with that directive.

Trial Court Opinion, 12/1/14, at 1-5 (internal citations and some footnotes omitted).

Appellant presents the following issues for our review:

Did the trial court abuse its discretion when it denied Appellant's motions to suppress evidence found in Room 215 and in Appellant's backpack?

Did the trial court impose an illegal sentence upon Appellant when it imposed the mandatory minimum sentence requested by the Commonwealth where said mandatory sentence statute was unconstitutional?

Appellant's Brief at 4.

Appellant first maintains that the trial court erred in denying his motion to suppress evidence found in Room 215. Appellant's Brief at 32. Appellant argues that officers had no reason to lawfully enter Room 215.

- 4 -

*Id.* at 23. Specifically, Appellant contends that the police were not justified in entering Room 215 at the Inn, "as there were no exigent circumstances extant that would have justified the officers' entry into that room without probable cause or a search warrant." *Id.* Appellant asserts that although the police contend that their reason for entering Room 215 without a warrant was their concern for the safety of the alleged victim, the police knew that the alleged victim was no longer at the Inn. *Id.* As a result, the officers had no reason to believe that the alleged victim was in Room 215 of the Inn. *Id.* Appellant argues that any items seen in the room by the officers could not be used in a supporting affidavit for a search warrant, thereby rendering the subsequent search warrant for Room 215 constitutionally invalid and requiring that the results of the search be suppressed as fruit of the poisonous tree. *Id.* at 23-24.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Russo*, 934 A.2d 1199, 1203 (Pa. 2007) (citing *Commonwealth v. Boczkowski*, 846 A.2d 75 (Pa. 2004)). Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id*. However, it is also

J-S37027-15

well settled that an appellate court is not bound by the suppression court's conclusions of law. *Id*. (citing *Commonwealth v. Duncan*, 817 A.2d 455 (Pa. 2003)).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this [C]ourt.

*Commonwealth v. Benton*, 655 A.2d 1030, 1032 (Pa. Super. 1995) (citations omitted). In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003). In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1088–1089 (Pa. 2013).[1]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Pa. Const. art. 1, § 8. "The

---

[1] Our Supreme Court in *L.J.* clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. The suppression hearing in this case post-dates *L.J.*, so *L.J.* is applicable here. *Commonwealth v. Davis*, 102 A.2d 996, 999 n. 5 (Pa. Super. 2014).

protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." ***Commonwealth v. Brundidge***, 620 A.2d 1115, 1118 (Pa. 1993) (citing ***Rakas v. Illinois***, 99 S.Ct. 421, 430 (1978)).

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. Additionally, a determination of whether an expectation of privacy is legitimate or reasonable entails a balancing of interests.

***Brundidge***, 620 A.2d at 1118 (internal citations and quotation marks omitted). Also, the Supreme Court has stated that "a guest in a motel or hotel room has a legitimate expectation of privacy during the period of time it is rented." ***Id.***

As a general rule, "a search warrant is required before police may conduct any search." ***Commonwealth v. White***, 669 A.2d 896, 900 (Pa. 1995). Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable. ***Commonwealth v. McCree***, 924 A.2d 621, 627 (Pa. 2007). This is the law under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. ***Id.***

One such exception to our well-established warrant requirement is "exigent circumstances," which this Court has explained, as follows:

> The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb[,] or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.
>
> * * *
>
> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, **or a danger to police or other persons inside or outside the dwelling.**

*Commonwealth v. Richter*, 791 A.2d 1181, 1184-1185 (Pa. Super. 2002) (emphasis added). "An inquiry to determine whether exigent circumstances exist involves a balancing of the individual's right to be free from unreasonable intrusions against the interest of society in investigating crime quickly and adequately." *Commonwealth v. Hinkson*, 461 A.2d 616, 618 (Pa. Super. 1983). "It requires an examination of all of the surrounding circumstances in a particular case." *Id.* (citing *Commonwealth v. Harris*, 239 A.2d 290, 292 (Pa. 1968)).

"One of these circumstances is when the police reasonably believe that someone within a residence is in need of immediate aid." *Commonwealth v. Potts*, 73 A.3d 1275, 1280 (Pa. Super. 2013) (citing *Commonwealth v. Galvin*, 985 A.2d 783, 795 (Pa. 2009)). Indeed, Pennsylvania courts

specifically have singled out domestic disputes as a situation that may give rise to exigency:

> "It is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger." **Commonwealth v. Wright**, 742 A.2d 661, 664 (Pa. 1999). The relevant inquiry is "whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger[.]" **Michigan v. Fisher**, 558 U.S. 45, 49 (2009) (citation and quotation marks omitted). "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." **Ryburn v. Huff**, 132 S.Ct. 987, 992 (2012) (quoting **Graham v. Connor**, 490 U.S. 386, 396-97 (1989)).

**Potts**, 73 A.3d at 1280-1281 (citations modified).

In the instant case, officers were responding to a domestic assault report at the Inn. N.T., 12/9/13, at 25. When the victim called 911, she sounded "extremely hysterical." **Id.** The victim stated she had been assaulted by a black male named "Flip," and that the assault had occurred at the Inn. **Id.** The victim also stated that "she could not give her location." **Id.** The victim stated that the assault occurred in Room 115 of the Inn. **Id.** The victim also stated on her call that she had been in Rooms 115 and 215 at the Inn. **Id.** at 52.

When officers arrived at Room 115, the victim was not discovered. N.T., 12/9/13, at 28. The occupants of that room directed officers to Room 210. **Id.** at 29. After discovering that Room 210 was vacant, the officers received information from the dispatcher that the victim could be located in

- 9 -

Room 215. *Id.* at 29, 130, 152. During the investigation, the officers also learned that Flip had another room at the Inn: Room 215. *Id.* at 130. At this point, the victim still had not been located. *Id.* at 29-30. As a result, the officers proceeded to Room 215. *Id.* at 30.

When officers arrived at Room 215, although the curtains to the room were drawn, they were open enough so that officers could see that there was a light on in the room. N.T., 12/9/13, at 30-31. The officers heard movement in the room as well. *Id.* at 30. The officers knocked on the door and announced themselves, but the occupant refused to open the door. *Id.* at 31. The officers directed the Inn manager to open the door. *Id.* The officers entered Room 215 under the belief that the victim may be in that room and was possibly in danger or in need of aid. *Id.* at 31. At the time they entered Room 215, they also had not been able to locate the perpetrator of the assault. *Id.* at 31. Officer Gallagher testified that after he had made entry into the room and discovered Gail Benedetto ("Benedetto") hiding in the bathroom, he heard a radio transmission that the victim had been located. *Id.* at 32.

Reviewing the totality of these circumstances, we conclude that police were justified in their warrantless entry of Room 215 at the Inn. The exigency in this case was created by the information received by officers that led them to believe that an act of domestic violence had occurred. Specifically, this information created a reasonable belief that the victim was

in need of the officers' assistance. *Potts*, 73 A.3d at 1280-1281. Before entering Room 215, the officers had not located the perpetrator of the assault or the victim. The information relayed to officers established that Room 215 was connected to the victim and the perpetrator, and officers properly conducted their search of that room for purposes of excluding it as the victim's location. These exigent circumstances allowed the officers to take "immediate action" and enter Room 215 without a warrant to prevent further harm.

Furthermore, we find no merit to Appellant's argument that the officers had evidence that the victim was no longer at the Inn and thus had no basis to continue the search for her there. The evidence of record establishes that the officers were receiving multiple reports from several sources regarding this incident. While the evidence of record reveals that officers had a report that the victim was no longer at the Inn, the officers also had a report that the victim and "the male" were still in a room at the Inn. N.T., 12/9/13, at 78-80. The victim was less than forthcoming with information regarding her whereabouts due to her concern about an outstanding probation violation warrant. *Id.* at 57, 83. The victim also told the 911 dispatcher that she did not know where she was. *Id.* Moreover, Officer Gallagher provided the following explanation on cross-examination as to why he did not discredit the information that the victim was at the Inn based solely on the victim's statement that she was no longer at the Inn:

Again, because sometimes people lie to me. I have a victim to find. I need to make sure she's okay. It's similar to when people have 911 hang-ups. They say everything is okay. We still go to make sure that someone is not holding a gun to their head saying you better tell them everything is okay.

*Id.* at 83. As our Supreme Court has stated, "[c]ourts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." **Commonwealth v. Davido**, 106 A.3d 611, 622 (Pa. 2014). Moreover, courts have recognized that deference to officers' on-the-spot reasonable judgments is particularly warranted in domestic disputes. **Id.** Thus, despite this conflicting testimony, we conclude that under the totality of the circumstances, the police were justified in their warrantless entry of Room 215.

Once lawfully in the motel room, officers saw two crack pipes in plain view on the dresser. We apply the following test to determine whether the plain view exception to the warrant requirement applies:

For the exception to be present, initially, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Moreover, two additional conditions must be satisfied to justify the warrantless seizure. First, the incriminating character of the item must be immediately apparent. Also, the officer must have a lawful right of access to the object itself.

**Commonwealth v. Turner**, 982 A.2d 90, 92 (Pa. Super. 2009) (quotation marks and citations omitted).

- 12 -

As mentioned, the officers lawfully arrived in the motel room during their search for the victim. Additionally, the incriminating character of the crack pipe was immediately apparent to Officer Gallagher and the officer had a lawful right of access to the object itself. *Turner*, 982 A.2d at 92. Thus, we conclude that the officer lawfully discovered the crack pipes in plain view in Room 215.

Moreover, based on the identification of the crack pipes, the officers secured the room and applied for a search warrant for Room 215. "[A] warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause." *Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998). "In order to obtain a valid search warrant, the affiant must establish probable cause to believe that execution of the warrant will lead to the recovery of contraband or evidence of a crime." *Commonwealth v. Janda*, 14 A.3d 147, 157 (Pa. Super. 2011). We review the issuing authority's decision in light of the totality of the circumstances:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in [*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. ... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must

accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non-technical manner.

*Id.* at 157-158.

Here, the warrant identifies the place to be searched as follows:

America's Best Value Motel Room #215. This motel is located at 29 High St. Pottstown Borough Montgomery County, PA 19464. Room #215 is located on the upper level of the motel on southeast corner of the complex. Room #215 has a green door with "#215" marked on the [front].

Commonwealth's Suppression Exhibit 2, Search Warrant, 2/16/13, at 1. The items to be searched and seized were identified as drugs and drug paraphernalia. *Id.* As such, the search warrant described the place to be searched and the items to be seized with specificity.

Additionally, Officer Gallagher executed an affidavit of probable cause in support of the search warrant. Commonwealth's Suppression Exhibit 2, Jonathan Gallagher Affidavit, 2/16/13, at 1-2. In addition to outlining the circumstances of his investigation that led him to Room 215, the affidavit included the following statement regarding what Officer Gallagher observed once in Room 215:

While speaking with Benedetto, I noticed in Plain View on top of the room's dresser, two metal pipes. These pipes are consistent with those I have seen in my career, to be Crack Cocaine smoking pipes. The ends of the pipes were charred and appeared to have copper mesh inside.

Benedetto stated that she had been allowed to stay in this room by "Flip". She claimed to not know where "Flip" was.

- 14 -

> Benedetto stated that she has been staying in this room for 2 days.

*Id.* at 2. Officer Gallagher presented the following conclusion in requesting the search warrant:

> Based on the above facts and circumstances which I believe to be true and correct, I believe that there is drug activity presently going on inside Room #215 of the America's Best Value Motel. I further believe that the Crack Cocaine smoking pipes are evidence of such activity.
>
> At this time I respectfully request that a SEARCH WARRANT be issued for ROOM #215 of the AMERICA'S BEST VALUE MOTEL, in order to seize the evidence in plain view and any other evidence that is concealed, showing the drug activity that is going on in this particular room. THIS MOTEL ROOM IS LOCATED IN THE BOROUGH OF POTTSTOWN, MONTGOMERY COUNTY, PA 19464.
>
> I believe this search warrant is necessary to seize the evidence and prosecute those parties involved.

*Id.*

The evidence of record establishes that the search warrant identified the area to be searched and items to be seized with specificity, and it was supported by probable cause. Accordingly, the search warrant was properly issued.

Upon search of the room, Officers discovered the previously described drugs and paraphernalia. Because the warrant was properly issued, we

cannot agree that the trial court erred in denying Appellant's motion to suppress this evidence.[2]  Therefore, Appellant's first claim lacks merit.

In his second issue, Appellant argues that the judgment of sentence imposed against him is illegal.  Appellant's Brief at 33.  Appellant contends that the mandatory minimum three-year sentence imposed pursuant to 18 Pa.C.S. § 7508 has been held unconstitutional following the decision of ***Alleyne v. Unites States***, _ U.S. _, 133 S.Ct. 2151 (2013).  ***Id.***  Appellant further maintains that this Court has held that 18 Pa.C.S. § 7508 is unconstitutional following the ***Alleyne*** decision.  ***Id.***  Thus, Appellant argues, his sentence should be vacated and his case should be remanded to the trial court for re-sentencing.  ***Id.*** at 34.  Furthermore, Appellant asserts that the trial court's alternate sentence should not be imposed by this Court on appeal.  ***Id.***

The Commonwealth agrees[3] with Appellant's assertion that the initial sentence imposed upon Appellant is illegal in light of ***Alleyne*** and the

---

[2] In his statement of questions involved, Appellant avers that the officers illegally searched the backpack that was in Room 215.  Appellant's Brief at 4.  Appellant, however, fails to develop any argument on the alleged unlawful search of the backpack in his appellate brief.  We note that the search of the backpack in Room 215 was lawfully conducted. ***Commonwealth v. Reese***, 549 A.2d 909, 911 (Pa. 1988) ("Where a search warrant adequately describes the place to be searched and the persons and/or things to be seized the scope of the search "extends to the entire area in which the object of the search may be found" and properly includes the opening and inspection of containers and other receptacles where the object may be secreted.").

related cases of this Commonwealth. The trial court also acknowledged that in light of recent caselaw, its "effort at the time of the instant trial in submitting the weight determinations for the jury to determine beyond a reasonable doubt on the verdict sheet has not proven to be a viable solution to *Alleyne*." Trial Court Opinion, 12/1/14, at 20.

This Court has ruled that section 7508, in its entirety, is unconstitutional. *Commonwealth v. Cardwell*, 105 A.3d 748, 755 (Pa. Super. 2014); *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*). As such, the trial court's reliance upon section 7508 when sentencing Appellant was error, necessitating that we vacate Appellant's sentence.

We must next consider whether we should remand this case for resentencing or impose the alternate sentence that the trial court issued. Both the trial court and the Commonwealth urge us to adopt the alternate

*(Footnote Continued)* ─────────────

[3] In its brief, the Commonwealth provides the following discussion on Appellant's second issue:

> The Commonwealth maintains its position that *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), and its progeny, including *Commonwealth v. Fennell*, 105 A.3d 13 (Pa. Super. 2014), were improperly decided. It acknowledges, however, that they are binding precedent at this time. Accordingly, the Commonwealth concedes that the sentence, pursuant to the aforementioned cases, is illegal.

Commonwealth's Brief at 10.

sentence issued in conjunction with the initial sentence in anticipation of that sentence being deemed illegal pursuant to **Alleyne** and its progeny. Trial Court Opinion, 12/1/14, at 20-21; Commonwealth's Brief at 10-11. Appellant, however, asserts that the matter should be remanded for re-sentencing by the trial court. Appellant's Brief at 35.

We note the following tenets regarding a vacated sentence. When a sentence is vacated it is rendered a legal nullity. **Commonwealth v. Wilson**, 934 A.2d 1191, 1196 (Pa. 2007). In **Wilson**, the Supreme Court ruled that the Commonwealth could introduce evidence in support of a sentencing enhancement after remand that it did not introduce at the first sentencing proceeding. **Id**. at 1198. Once the initial sentence is vacated, the admissibility of evidence at the second sentencing hearing becomes a matter committed to the sound discretion of the trial court, as no restraints are placed upon the trial court's exercise of its discretion in this regard. **Id.** Furthermore, we have explained that "[w]hen a sentence is vacated and the case is remanded to the sentencing court for resentencing, the sentencing judge should start afresh." **Commonwealth v. Jones**, 640 A.2d 914, 919–920 (Pa. Super. 1994). We further explained:

> Reimposing a judgment of sentence should not be a mechanical exercise. Given the important nature of the interests involved, the judge at the second sentencing hearing should reassess the penalty to be imposed on the defendant-especially where defense counsel comes forward with relevant evidence which was not previously available. Thus, [appellant's] conduct since the prior sentencing hearing is relevant at resentencing. The sentencing judge must take note of this new evidence and

- 18 -

> reevaluate whether the jail term which [appellant] received is a just and appropriate punishment.

*Id.* at 920 (internal quotations and citations omitted).

We have been unable to identify any authority allowing a trial court to issue an alternate sentence that can be imposed on direct appeal should the initial sentence be deemed illegal, nor do the parties direct us to any. Here, the trial court cites no authority in support of its position that this Court should adopt the alternate sentence. The Commonwealth, in support of its claim that resentencing is unnecessary because the trial court provided an alternate sentence, relies on caselaw providing that this Court may correct an illegal sentence directly and cites to *Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa. Super. 2003), and *Commonwealth v. Alarie*, 547 A.2d 1252 (Pa. Super. 1988), as support for its position. Commonwealth's Brief at 10-11.

In *Commonwealth v. Randal*, the appellant pled guilty to two counts of Driving Under the Influence (DUI), one count of Receiving Stolen Property (RSP), and the summary offense of Windshield Obstructions and Wipers. *Randal*, 837 A.2d at 1211. The appellant was sentenced as follows: on the first DUI count, to serve a period of incarceration of not less than thirty days nor more than two years, less one day; no further penalty was imposed for the second DUI count; on the RSP count, to a two-year period of probation, consecutive to the sentence on the first DUI count; for the summary offense, the court imposed a fine; and pursuant to Act 63, the sentencing court

ordered Appellant to have installed an approved ignition interlock device on every vehicle owned or registered in the appellant's name. *Id.* at 1212. Subsequent to the appellant's appeal of his judgment of sentence, the Supreme Court held that portions of Act 63, requiring the sentencing court to order the installation of the ignition interlock system, verify compliance, and certify the installation, were found to be unconstitutional. *Id.* at 1213.

Thus, this Court determined it was obligated to correct the sentence imposed upon the appellant. *Id.* at 1214. Relying on our authority to amend a sentence directly, this Court vacated the appellant's sentence only to the extent that it imposed the requirement that the appellant install an ignition interlock system on all vehicles he owned. *Id.* The remainder of the sentence was left intact. *Id.*

Thus, in *Randal*, this Court did not vacate the appellant's original sentence and impose a new sentence. Instead, we simply vacated an element of the appellant's sentence found to be unconstitutional and allowed the rest of the sentence to remain in effect. Accordingly, we cannot agree that the *Randal* case provides support for the requested action of this Court vacating a sentence in its entirety, and then re-sentencing Appellant with an alternate sentence provided by the trial court at the time of the initial sentencing.

Additionally, in *Alarie*, following the trial court's imposition of sentence, the appellant filed a motion for reconsideration. *Alarie*, 547 A.2d

1255. The trial court recognized its error in sentencing the appellant and issued an order granting the motion for reconsideration and vacating part of the illegal sentence. *Id.* at 1255-1256. The trial court, however, did not expressly grant the motion for reconsideration within thirty days prescribed by the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. §§ 1701(b)(3)(ii), 903; *Alarie*, 547 A.2d at 1256. Thus, the trial court's untimely order granting the motion for reconsideration lacked binding effect. *Id.* Upon review, this Court determined that the trial court's order vacating the illegal sentence was correct. *Id.* at 1256. As a result, instead of remanding, this Court amended the sentence by vacating only the illegal portion of the sentence. *Id.*

The *Alarie* case also is distinguishable from the case before us. As noted, in *Alarie*, this Court simply struck off a portion of the appellant's sentence that was illegal and the remainder of the sentence was affirmed. In the case before us, the original sentence imposed is illegal and must be vacated in its entirety. Therefore, neither *Randal* nor *Alarie* provide authority for the Commonwealth's and trial court's proposed action.

As such, we conclude that this matter should be remanded for resentencing. The vacated sentence has become a legal nullity. *Wilson*, 934 A.2d at 1196. An entirely new sentence must be imposed. Upon remand for re-sentencing, the trial court "should start afresh" and "reassess the penalty to be imposed on [Appellant]." *Jones*, 640 A.2d at 919-920.

For these reasons, we decline to impose the alternate sentence set forth by the trial court.

Judgment of sentence vacated. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2015