J-S16013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                        :  PENNSYLVANIA
                                                        :
                          v.                            :
                                                        :
                                                        :
                                                        :
SHAWN F. HARTMAN                        :
                                                        :
                    Appellant                      :  No. 1385 MDA 2021

Appeal from the Judgment of Sentence Entered September 27, 2021
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-0000705-2020

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:              **FILED: SEPTEMBER 21, 2022**

Shawn F. Hartman appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas on September 27, 2021, after he was convicted of possession of drug paraphernalia. On appeal, Hartman argues the trial court erred by denying his motions to suppress physical evidence and a statement he made to police. We affirm.

On July 10, 2020, a criminal complaint was filed against Hartman charging him with possession of drug paraphernalia. The charge alleged that Hartman had admitted to owning a glass pipe and using it to smoke methamphetamine. Hartman subsequently filed a pretrial motion to suppress the glass pipe as well as his admissions to owning and using the pipe.

_____

[*] Retired Senior Judge assigned to the Superior Court.

At the suppression hearing, Probation Officer Kacey Fisher testified that on January 8, 2020, she and other officers from Northumberland County Adult Probation and Parole arrived at Hartman's residence looking for a female probationer who had Hartman's residence listed as her approved address. Officer Fisher knocked on the door and Hartman answered. *See* N.T., Suppression Hearing, 5/20/2021, at 4. Officer Fisher asked Hartman if the female probationer was present, to which Hartman responded she was not. *See id*. Officer Fisher then asked if Hartman would allow them into the residence to take a walk through of the house since they had been there multiple times before with no one answering the door previously. *See id*. Hartman allowed the officers inside the residence. *See id*.

The probation officers inquired if there were any other persons in the home. *See id*. at 5. Hartman answered there was only one other person, his nephew, there at the time. *See id*. However, upon walking through the home the probation officers found a female and two additional males. *See id*. At that point, the probation officers asked everyone to wait in the living room so they could determine if anyone else was in the residence. *See id*. Due to the number of people found in the home, the probation officers contacted local law enforcement to come to the home for assistance. *See id*. at 6. Fisher then continued to search the home to determine if there were any other persons present and to continue a general walk-through of the residence. *See id*. Upon entering the basement, Fisher found, in plain view, a mirror, a glass pipe -

commonly used to smoke methamphetamine, and residue. *See id*. As the police had arrived within a few minutes, Fisher called the police into the basement to look at the items found. *See id*. at 7.

Coal Township Police Officer Joshua Wynn testified that he received a call to respond to the residence to assist probation. *See id*. at 12. When he arrived there were several people seated in the living room and probation officers advised him they were looking for a probationer and wanted to check the home. *See id*. The probation officers asked if he would just stand by while they completed the search. *See id*. Officer Wynn waited in the living room along with another probation officer, who explained what was going on. *See id*. at 16. Shortly thereafter, Officer Wynn was called to the basement where obvious drug paraphernalia was located in plain sight. *See id*. at 13. Officer Wynn took possession of the glass pipe. *See id*. He then went back upstairs and asked the group assembled in the living room who the pipe belonged to. *See id*. Hartman answered that it was his and that he used the pipe in the past to smoke methamphetamine but stated he does not use drugs anymore. *See id*. at 13-14. At no point was Hartman handcuffed. *See id*.

Finally, Hartman testified on his own behalf, largely contradicting the probation and police officer's testimony. Relevantly, Hartman testified he lived at the address searched with his girlfriend, and that he was aware of his girlfriend's probation conditions. *See id*. at 18-19. Hartman asserted he was not asked for permission to enter his home, and he never gave permission for

the officers to enter. *See id*. at 19. He was told to sit in the living room with everyone else and at that point he did not feel he was free to leave. *See id*. at 20. Hartman admitted to telling Officer Wynn that the pipe was his. *See id*. at 21. However, he stated Officer Wynn did not ask everyone in the room who the pipe belonged to, but instead asked Hartman directly if the pipe was his. *See id*. at 22, 26. At the time, Hartman stated he was seated in his recliner in his living room. *See id*. at 26.

After the hearing, the trial court denied the suppression motion. On July 13, 2021, after a jury trial, Hartman was found guilty of possession of drug paraphernalia. Two months later, the trial court sentenced him to twelve months' probation. This timely appeal followed.

Hartman raises two issues for our review:

1. Did the [trial] court err when it denied [Hartman]'s motion to suppress evidence based on an illegal search.

2. Did the [trial] court err when it denied [Hartman]'s motion to suppress [Hartman]'s alleged admission due to a violation of his Miranda rights.

Appellant's Brief, at 6.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. 2012) (citations omitted).

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing." *Commonwealth v. Caple*, 121 A.3d 511, 517 (Pa. Super. 2015) (citation omitted).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted).

Hartman first argues the probation officers' visit to his residence constituted a search that was not supported by reasonable suspicion and was therefore unconstitutional. We find Hartman has misconstrued the probation officers' walkthrough of his residence as a "search".

"[Probation] Officers are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public." 42 Pa.C.S.A. § 9912(a).

- 5 -

The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen. The institution of probation and parole assumes a probationer or parolee is more likely than the ordinary citizen to violate the law. Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy. This Court explained that probation officers, like parole officers:

[A]re in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public. Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society. As such, probationers and parolees are subject to general and individual rules of conduct and supervision described at sentencing and/or in the parole agreement.

***Commonwealth v. Parker***, 152 A.3d 309, 316-17 (Pa. Super. 2016) (citations and internal quotation marks omitted); ***see also*** 42 Pa.C.S.A. § 9912(a). Accordingly, this Court has previously held that probation or parole officers performing a walkthrough or homevisit to ensure compliance with a probationer's conditions of probation, consistent with their supervisory duties, does not constitute a search. ***See Commonwealth v. Smith***, 85 A.3d 530, 537 (Pa. Super. 2014).

Here, Hartman's girlfriend was on probation at the time Fisher and her colleagues arrived at the residence. Hartman admitted that he had previously spoken to someone when his girlfriend was put on probation to give permission for her to live with him during probation. ***See*** N.T., Suppression Hearing, 5/20/2021, at 22. He acknowledged that he understood her probation officers would be coming to see her every so often, and that her

supervision would include home visits and walk-throughs. *See id*. While he stated that probation officers had never been there before, he conceded he had agreed to those conditions when he agreed to allow his girlfriend to live at his residence while she was on probation. *See id*. at 23.

In performing their lawful duty to supervise their probationer, Fisher and other probation officers visited the residence listed as their probationer's approved address. The visit was conducted because the probation officers had attempted to view the residence numerous times before and had never been able to get someone to answer the door.

Upon arriving at Hartman's residence this time, Fisher identified herself and her associates to Hartman. She then asked if Hartman's girlfriend was present and stated her intention of doing a walk-through of the residence. Fisher testified that they were checking to see the layout of the home and who was in the home, especially after discovering more people were in the home than Hartman had originally indicated. The probation officers only checked common areas for anyone and anything in plain sight.

We conclude the probation officer's actions in walking through the residence did not constitute a search. Rather, the probation officers were performing their lawful supervisory duties by attempting to visit their probationer at her registered home to ensure her compliance with the conditions of her probation. The visit never progressed beyond visual inspection, as the glass pipe was found in plain sight. It is clear from the record

that the walk-through was fairly brief, as the probation officers called the police shortly after getting there, and Officer Wynn arrived within minutes of receiving the dispatch call. Additionally, the record does not indicate that the probation officers did anything more than walk through a few rooms looking for anything and anyone in plain sight. During this lawful visit, Fisher observed a glass pipe typically used for methamphetamine in plain view in Hartman's basement.

Accordingly, we find no error in the trial court's denial of Hartman's motion to suppress the evidence obtained from his residence.

Hartman next argues that his subsequent confession to police should have been suppressed since he was not given *Miranda* warnings. Notably, Hartman does not contest the voluntariness of his confession. Rather, he asserts that he was the subject of a custodial interrogation and therefore *Miranda* warnings were required prior to any questioning.

> Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Thus, [i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. In evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances....
>
> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial

interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [his] freedom of action is being restricted.

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

Thus, the ultimate inquiry for determining whether an individual is in custody for *Miranda* purposes is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

***Commonwealth v. Gonzalez***, 979 A.2d 879, 887-888 (Pa. Super. 2009) (citations and internal quotation marks omitted).

Here, the trial court determined Hartman voluntarily allowed the probation officers into the home. While Hartman was in his own home, and therefore his ability to leave was somewhat hindered, ***see Gonzalez***, 979 A.2d at 889, he voluntarily stayed in the living room along with the numerous other people who were at the residence that day. None of the individuals in the living room, including Hartman, were restrained in any manner. Hartman was not the subject of the home visit. The pipe was found while officers were performing lawful supervisory duties and not pursuant to any criminal investigation. Accordingly, there were no "suspects" at the time the pipe was found, nor at the time of Officer Wynn's question which occurred immediately thereafter.

We reiterate that we are bound by the trial court's credibility determinations. The trial court specifically credited Officer Wynn's testimony

that the blanket question was made to everyone in the living room and not to any one person specifically. There is no evidence of record that Officer Wynn intended to link any specific person in the room to a crime. While Hartman is the subject of this appeal, he was not the subject of the visit to the home, nor was he the subject of any investigation, criminal or otherwise.

Instead of remaining quiet, as everyone else in the room did, Hartman voluntarily responded to Officer Wynn's question posed to the group regarding if the glass pipe belonged to anyone. There is no evidence that the officer threatened anyone in the room, including Hartman, or otherwise made any impermissible inducements in exchange for a confession. No one in the room, including Hartman, was handcuffed or arrested at any point.

Under the totality of the circumstances, we do not find **Miranda** warnings were required in this instance. Hartman's freedom of action was not so restricted, and he was never asked a pointed question, that would cause him to reasonably believe he was not free to choose not to respond to questioning. Because we find he was not subject to a custodial interrogation, no **Miranda** warnings were required.

Accordingly, the trial court did not err in denying Hartman's motion to suppress his confession.

As we find the trial court did not err in denying Hartman's motion to suppress, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2022