**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PETER FRANCIS PRYOR, JR. | : | |
| | : | |
| Appellant | : | No. 914 WDA 2022 |

Appeal from the Judgment of Sentence Entered June 8, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001261-2021

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: December 21, 2023**

Appellant, Peter Francis Pryor, Jr., appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial conviction for persons not to possess firearms and firearms not to be carried without a license.[1] We affirm.

The trial court set forth the relevant facts of this case as follows:

> At 2:53 a.m. on February 26, 2021, police officers responded to a report of a domestic incident at 417 Kingsboro Street in the City of Pittsburgh. Upon arrival, officers interviewed Kimberly Lee, who reported that she and [Appellant] had an argument about money and she wanted him to be removed from the residence. [Appellant], however, had fled the scene prior to the arrival of the police officers. Ms. Lee was advised to obtain a Protection From Abuse Order if [Appellant] returned.
>
> At 3:44 a.m. on that same day, police officers responded to

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1).

a shotspotter alert at 417 Kingsboro Street for one shot fired. Upon arriving at the residence, Ms. Lee advised officers that [Appellant] had returned to the residence where she argued with [Appellant]. Ms. Lee provided officers with a physical description of [Appellant] and [Appellant] was located nearby at approximately 4:00 am. [Appellant] was asked if he had a weapon on him and he responded that he did possess a firearm. [Appellant] appeared nervous. He was rocking back and forth and he turned away from officers as they approached. The officers detained [Appellant] and conducted a pat-down of [Appellant]. A firearm was recovered from his person and there was a round in the chamber. [Appellant] did not possess a license to carry a firearm and he was prohibited from possessing a firearm due to a prior felony conviction for Aggravated Assault.

(Trial Court Opinion, filed 12/1/22, at 2). The Commonwealth charged Appellant with persons not to possess firearms, carrying a firearm without a license, and possession of drug paraphernalia, in connection with these events.

On January 31, 2022, Appellant filed a motion to suppress evidence, arguing that officers did not have reasonable suspicion to support his seizure, search, and subsequent arrest. The court conducted a hearing on the motion on March 10, 2022. The parties stipulated to the facts in the record, and after argument the court denied the motion. Appellant then proceeded to a stipulated bench trial, wherein the defense conceded that the Commonwealth met its burden for both firearm violations. (**See** N.T. Trial, 3/10/22, at 30). The court convicted Appellant of persons not to possess firearms and carrying a firearm without a license; it found Appellant not guilty of possession of drug paraphernalia.

On June 8, 2022, the court sentenced Appellant to 36 to 72 months' imprisonment for persons not to possess a firearm and imposed no further penalty for carrying a firearm without a license. On June 16, 2022, Appellant filed a timely post-sentence motion. The court denied the motion on July 11, 2022. Appellant filed a timely notice of appeal. The court subsequently ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant filed his statement on August 24, 2022.

Appellant raises the following issue on appeal:

> Did the trial court err in denying suppression as police did not have reasonable suspicion of criminal activity and/or probable cause when they illegally seized and searched [Appellant]?

(Appellant's Brief at 4).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27 (citation omitted). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal

conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (citation omitted).

Appellant argues that police did not have reasonable suspicion to conduct an investigative detention in this case. Appellant contends the suppression record contains no information about how many people were present when the shot was allegedly fired. Appellant suggests that someone else could have fired the gunshot. Appellant emphasizes that Ms. Lee and Appellant had only a verbal dispute, and Ms. Lee told police that Appellant did not have a gun. Appellant claims there was no evidence that Appellant was even at the location where the shot was allegedly fired. Appellant submits that vehicular noises, fireworks, or other sounds could have prompted the ShotSpotter notification. Appellant avers the record is also silent concerning how much time elapsed between when police received the ShotSpotter notification and when they located Appellant, and where he was in relation to where the shots had been fired. Appellant highlights that there was no evidence of him acting nervous when the police approached, or of the area being a high-crime area.

Appellant claims the police stopped him based solely on his possession of a concealed firearm. Appellant contends that the only evidence of record was that, at the officer's prompting, Appellant gave his name and confirmed he had a firearm. Appellant maintains the officer then patted him down for

officer safety and recovered a gun in Appellant's coat pocket. Relying on *Commonwealth v. Hicks*, 652 Pa. 353, 208 A.3d 916 (2019), *cert. denied*, ___ U.S. ____, 140 S.Ct. 645, 205 L.Ed.2d 410 (2019), Appellant argues that mere possession of a concealed firearm in public does not provide reasonable suspicion for police to conduct an investigative detention. Appellant concludes police conducted an illegal investigative detention in the absence of reasonable suspicion that Appellant was engaged in criminal activity, and this Court must grant relief. We disagree.

This Court has explained:

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures, including those entailing only a brief detention." *Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. *Commonwealth v. Blair*, [575 A.2d 593, 596 (Pa. Super. 1990)]. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention. *Id.*

*Commonwealth v. Mattis*, 252 A.3d 650, 654 (Pa.Super. 2021).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the

- 5 -

functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting ***Commonwealth v. Phinn***, 761 A.2d 176, 181 (Pa.Super. 2000), *appeal denied*, 567 Pa. 712, 785 A.2d 89 (2001)).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "***Terry***[2] stop." ***Commonwealth v. Brame***, 239 A.3d 1119 (Pa.Super. 2020), *appeal denied*, ____ Pa. _____, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> \* \* \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted). "In determining whether police had reasonable suspicion

---

[2] ***Terry v. Ohio***, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

to initiate an investigative detention, 'the fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.'" **Commonwealth v. Jefferson**, 256 A.3d 1242, 1248 (Pa.Super. 2021), *appeal denied*, ___ Pa. ____, 268 A.3d 1071 (2021) (quoting **Commonwealth v. Gray**, 784 A.2d 137, 142 (Pa.Super. 2001)). Demonstrating reasonable suspicion requires that the detaining officer "articulate something more than an inchoate and unparticularized suspicion or hunch." **Id.** (citation omitted).

In **Hicks, supra**, our Supreme Court held that "conduct in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully" is, on its own, "an insufficient basis for reasonable suspicion that criminal activity is afoot." **Hicks, supra** at 400, 208 A.3d at 945. However, behavior indicative of the presence of a firearm contributes to the totality of the circumstances in determining whether there is reasonable suspicion to investigate further. **Id.** at 939-40.

Instantly, the parties stipulated at the suppression hearing to the facts of record which included the affidavit of probable cause, the preliminary hearing transcript, and the description of the body camera footage from

Appellant's suppression motion.[3] The affidavit of probable cause explains that Officer Michael Mahich responded to a ShotSpotter alert at 3:44 a.m. Officer Mahich was aware that earlier that morning, at approximately 3:00 a.m., police responded to a "verbal domestic" call at the same location where the caller, Ms. Lee, stated that Appellant was arguing with her about money. When Officer Mahich arrived on the scene after the ShotSpotter alert, he made contact with Ms. Lee, who told him that Appellant returned to the home to argue with her. Ms. Lee provided a description of Appellant and suggested that it was likely he would still be in the area. Officer Mahich stated that at approximately 4:00 a.m., he located a male matching the description given by Ms. Lee in close proximity to the residence. Officer Mahich described what occurred next in the affidavit of probable cause as follows:

> I asked the male if his name was Peter, in which he acknowledged. I asked Peter[, Appellant,] if he had a gun on his persons, in which he acknowledged that he did. [Appellant] stated it was in his front right jacket pocket.

---

[3] On appeal, the parties disagree about which evidence was before the trial court at the suppression hearing. At the outset, we agree with Appellant that "[i]n appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing." *Commonwealth v. Caple*, 121 A.3d 511, 517 (Pa.Super. 2015), *appeal denied*, 645 Pa. 177, 179 A.3d 7 (2018) (citing *In re L.J.*, 622 Pa. 126, 151-52, 79 A.3d 1073, 1088-89 (2013)). However, here, rather than limiting the suppression court to testimony introduced at the suppression hearing, the parties stipulated to the facts of record. (*See* N.T. Hearing, 3/10/22, at 2-3). Thus, the trial court properly considered all evidence in the record of this case when ruling on the suppression motion which included, *inter alia*, the affidavit of probable cause, the preliminary hearing transcript, and the description of the body camera footage from Appellant's suppression motion (the actual body camera footage is not in the certified record), when ruling on the suppression motion.

[Appellant] appeared to be extremely nervous, rocking back and forth and beginning to turn away from me upon my approach. I ordered [Appellant] to keep his hands out and not reach for anything. Due to [Appellant] matching the description provided from [Ms.] Lee, the proximity of the shots fired notification, and [Appellant] acknowledging that he was carrying a firearm, I detained [Appellant] at approximately 0400 hours. I recovered a chrome handgun… from [Appellant's] front right jacket pocket…. [Appellant] stated that he did not have a concealed carry permit. Appellant was placed in custody at 0419 hours.

(Affidavit of Probable Cause, 2/27/21, at 2).

In its Rule 1925(a) opinion, the trial court explained its findings as follows:

This [c]ourt believes the officers possessed the requisite reasonable suspicion to conduct the pat-down of [Appellant]. At the time of the search, police officers were aware that [Appellant] was a participant in two domestic incidents, less than an hour apart, at a residence where a gunshot was reported at the time of the second incident. Police officers believed that [Appellant] was a participant in the domestic incident. Because there was a report of a gunshot being fired at the residence, the police officers' belief that [Appellant] was armed and dangerous was reasonable. This belief was confirmed when [Appellant] admitted that he possessed the firearm. These facts establish a reasonable suspicion that [Appellant] may be armed and dangerous at the time of the pat-down search. The search was, therefore, proper and the denial of [Appellant's] suppression motion should be affirmed.

(Trial Court Opinion at 6).

Upon review, we agree with the trial court that the facts available to the officers at the time of the investigative detention were sufficient to establish reasonable suspicion. Although Appellant is correct that, without more, his possession of a concealed firearm did not establish reasonable suspicion for

an investigative detention, the totality of the circumstances in this case provided enough additional factors to give the officers reasonable suspicion that criminal activity was afoot. *See Hicks, supra*; *Jones, supra*. Therefore, the trial court did not err in denying Appellant's motion to suppress.[4] *See Williams, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/21/2023

---

[4] In a footnote in his appellate brief, Appellant makes the alternative argument that the interaction at issue was a custodial detention lacking probable cause. (*See* Appellant's Brief at 13 n.3). Nevertheless, Appellant did not assert this alternative theory at the suppression hearing, as Appellant's argument focused solely on whether the officers had reasonable suspicion for an investigative detention. (*See* N.T. Hearing, 3/10/22, at 1-20). Furthermore, in Appellant's motion to suppress, he only argues that "[o]fficers did not have reasonable suspicion to support [his] seizure and subsequent arrest." (Motion to Suppress, filed 1/31/22, at 6). Appellant did not specifically argue that the interaction was a custodial detention for which the officers lacked probable cause. (*See id.*). Therefore, Appellant failed to preserve this alternative theory of relief for review. *See Commonwealth v. Champney*, 161 A.3d 265, 285 n.25 (Pa.Super. 2017) (*en banc*), *appeal denied*, 643 Pa. 190, 173 A.3d 268 (2017) (holding that appellant failed to preserve argument which was not raised in suppression motion or before trial court at suppression hearing).