**COMMONWEALTH of Pennsylvania**

v.

**Eric David TURNER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 2009.

Filed Sept. 17, 2009.

Stephen H. Begler, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., and Rebecca G. McBride, Asst. Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., SHOGAN and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Eric David Turner appeals from the judgment of sentence of August 13, 2008, following his conviction of two counts each of aggravated assault and recklessly endangering another person ("REAP"). We affirm.

¶ 2 On August 13, 2008, following a non-jury trial before the Honorable Jeffrey A. Manning, appellant was found guilty of the above charges. Appellant was found not guilty of two additional counts of criminal attempt (homicide). Immediately following trial, the court imposed a mandatory minimum of five to ten years' imprisonment. This timely appeal followed.

¶ 3 Appellant has raised the following issue for this court's review:

> Did the trial court err when it denied Appellant's Motion to Suppress where the incriminating nature of the shotgun shell recovered from Appellant's vehicle was not readily apparent and where its warrantless seizure violated Appellant's rights under the Fourth Amendment of [sic] the United States Constitution and Article I, sec. 8, of the Constitution of the Commonwealth of Pennsylvania?

Appellant's brief at 4.

> [W]hen reviewing a motion to suppress evidence, our standard of review is well established:
>
> > The admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion. [W]e consider whether the record supports the suppression court's factual findings, and the legal conclusions drawn therefrom, by reviewing the prosecution's evidence

and only so much of the defense's evidence as remains uncontradicted [sic] within the context of the record as a whole. Factual findings unsupported by the evidence may be rejected, but if the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Harris,* 888 A.2d 862, 868 (Pa.Super.2005), *appeal denied,* 593 Pa. 746, 931 A.2d 656 (2007), quoting *Commonwealth v. McCree,* 857 A.2d 188, 190 (Pa.Super.2004) (citations omitted), *affirmed,* 592 Pa. 238, 924 A.2d 621 (2007) (plurality).

¶ 4 Appellant contends that his Fourth Amendment rights were violated when police seized an empty shotgun shell from the front passenger seat of his vehicle. Appellant argues that the plain view exception to the warrant requirement did not apply.

For the exception to be present, initially, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Moreover, two additional conditions must be satisfied to justify the warrantless seizure. First, the incriminating character of the item must be 'immediately apparent.' Also, the officer must have a lawful right of access to the object itself.

*Id.,* citing *McCree, supra,* in turn citing *Horton v. California,* 496 U.S. 128, 137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).[1]

Our Supreme Court has expressly recognized that incriminating objects 'plainly viewable [in the] interior of a vehicle' are in 'plain view' and, therefore, subject to seizure without a warrant. This doctrine rests on the principle that an individual cannot have a 'reasonable expectation of privacy in an object that is in plain view.'

*Commonwealth v. Ballard,* 806 A.2d 889, 892 (Pa.Super.2002), citing *Commonwealth v. Colon,* 777 A.2d 1097, 1103 (Pa.Super.2001), citing *Commonwealth v. Milyak,* 508 Pa. 2, 6, 493 A.2d 1346, 1348 (1985); *Commonwealth v. Petroll,* 558 Pa. 565, 576, 738 A.2d 993, 999 (1999). "In determining 'whether the incriminating nature of an object [is] immediately apparent to the police officer,' we look to the 'totality of the circumstances.'" *Id.,* quoting *Petroll, supra.* "An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause." *Id.,* citing *Commonwealth v. Ellis,* 541 Pa. 285, 296–298, 662 A.2d 1043, 1049 (1995).

¶ 5 Officer Christopher Adams testified that on October 12, 2007, he received information over the radio that shots had been fired in the area of the 17 building of Marion Circle, in the City of Clairton. (Notes of testimony, 4/14/08 at 3.)[2] The time was approximately 4:40 p.m. (*Id.* at 4.) When Officer Adams arrived, he was approached by the complainant, Laticia Ogletree ("Ogletree"), who stated that a black male named Eric Turner had fired shots in her direction from a shotgun. (*Id.*) Officer Adams examined Ogletree's

---

**1.** In *McCree,* the Pennsylvania Supreme Court re-affirmed that *Horton* remains the law in Pennsylvania, *i.e.,* that the plain view exception contains three prongs: "(1) the police must be at a lawful vantage-point; (2) the incriminating character of the object must be immediately apparent; and (3) the police

must have a lawful right of access to the object." *McCree, supra* at 245, 924 A.2d at 625.

**2.** It appears from the suppression hearing testimony that Marion Circle is some sort of housing project.

door, and found evidence that it had been fired upon. (*Id.* at 5–6.) An unknown female directed officers to a dumpster in front of 15 building, where they recovered a live 12–gauge shotgun shell. (*Id.* at 4–5.) Officer Adams also found a spent 12–gauge shotgun shell in front of the same dumpster. (*Id.* at 5, 8.) Officer Adams estimated the distance from 17 building to the dumpster in front of 15 building to be approximately 25–30 yards. (*Id.* at 5.)

¶ 6 Police received information that the perpetrator was seen driving a black sedan in the area of Third and Wadell Streets, approximately four blocks away. (*Id.* at 6, 9–10.) They responded to that location, where Officer Adams observed an unoccupied vehicle matching that description. (*Id.* at 6.) Officer Adams looked inside the vehicle and saw an empty 12–gauge shotgun shell lying on the front passenger seat. (*Id.* at 6–8, 12.) Officer Adams opened the unlocked car door and retrieved the shotgun shell. (*Id.* at 7, 10.) At that time, the vehicle was towed and police subsequently obtained a search warrant. (*Id.* at 7–8, 12; Commonwealth's Exhibit 1.)[3]

■ ¶ 7 We will examine the three prongs of the *Horton* standard *seriatim* in view of all the facts. First, Officer Adams viewed the shotgun shell from a lawful vantage point. The vehicle was parked on a public street, and Officer Adams ob-

served the shotgun shell through the driver's side window. (*Id.* at 6–7.) Thus, Officer Adams was lawfully present. *McCree, supra* at 254, 924 A.2d at 631 (officer lawfully approached the driver's side of the defendant's vehicle where it was parked on a public street); *Ballard, supra* at 892 (officers viewed bags of marijuana from a lawful vantage point outside the defendant's car).

■ ¶ 8 Turning to the second prong, considering the totality of the circumstances, the object Officer Adams saw was immediately incriminating in nature. Officer Adams had received information that an individual was firing shots from a shotgun, and he recovered two 12–gauge shotgun shells, one empty and one live, from outside a nearby dumpster. The vehicle's description and location matched that given by eyewitnesses. The vehicle was found, unoccupied, only four blocks from the scene of the incident. The shotgun shell observed resting on the front passenger seat was also a 12–gauge, matching the other two. These facts, taken together, are sufficient to establish that the incriminating nature of the shotgun shell was immediately apparent.

■ ¶ 9 Finally, turning to the third prong,[4] Officer Adams lawfully accessed the interior of the vehicle under the limited automobile exception to the warrant

3. Appellant also moved to suppress the evidence on the basis that the search warrant was deficient; however, he does not raise that issue on the instant appeal.

4. This prong of the *Horton* test concerning the "lawful right of access" to the evidence is frequently misunderstood and conflated with the other two. Simply because an officer views incriminating evidence from a lawful vantage point does not mean that he is automatically entitled to seize the evidence. As Chief Justice Cappy explained in his concurring opinion in *McCree:*

This prong builds upon the concept that even though it is immediately apparent to police officers that they have contraband before them, and they viewed this evidence from a lawful vantage point, they are not authorized to seize the evidence. Rather, the police officer must have some legal justification or lawful right of access to make the seizure.
*McCree, supra* at 257, 924 A.2d at 633 (footnote omitted) (Cappy, C.J., concurring).

requirement. Officer Adams' observation of the spent shotgun shell, combined with the remaining information above, created probable cause to believe it was evidence of a crime. Since there was no advance warning that appellant or his vehicle would be the target of a police investigation, the limited automobile exception applied to grant Officer Adams the right to access the interior of the vehicle. *McCree, supra* at 252–256, 924 A.2d at 630–631 (discussing the limited automobile exception to the search warrant requirement).[5] Appellant cannot claim a legitimate expectation of privacy in the shotgun shell, which was lying on the front passenger seat of the unoccupied and unlocked vehicle and was clearly visible from the outside. *Ballard, supra* (no reasonable expectation of privacy in clear bags of marijuana resting on back seat of defendant's car); *McCree, supra* at 252, 924 A.2d at 630 ("the heightened privacy concerns involved in a seizure from an individual's person are not present where an object is seized from a vehicle").

¶ 10 Having determined that all three prongs of the *Horton* test have been met, *i.e.*, that Officer Adams was at a lawful vantage point when he viewed the spent shotgun shell on the front passenger seat of appellant's vehicle; that the incriminating nature of the object was immediately apparent; and that Officer Adams had a lawful right of access to the object, the trial court did not err in ruling that the plain view exception to the warrant re-

quirement applied and denying appellant's motion to suppress the evidence. Furthermore, as we have held that the evidence was admissible and appellant's Fourth Amendment rights were not violated, we need not address appellant's related argument concerning the exclusionary rule. (Appellant's brief at 10–12.) [6]

¶ 11 Judgment of sentence affirmed.

---

5. The *McCree* court split on the issue of whether, and to what extent, the automobile exception to the warrant requirement applies in Pennsylvania. However, a majority of the court (with Justice Castille concurring in the result) would recognize at least a "limited automobile exception" under Article I, Section 8, due to a diminished expectation of privacy with respect to a vehicle.

6. Appellant argues that because the initial seizure of the shotgun shell was illegal, evidence recovered from the glove compartment dur-

ing the ensuing search must likewise be suppressed as fruit of the poisonous tree. Since we have determined that the plain view exception applied to permit the warrantless seizure of the shotgun shell, appellant's argument that the subsequent search of the vehicle was tainted is rendered moot. In addition, we note that appellant's exclusionary rule argument was not raised in his statement of questions involved and is therefore waived. Pa.R.A.P. 2116(a).