J-A18019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD JOHN BRILL | |
| Appellant | No. 1956 MDA 2013 |

Appeal from the Judgment of Sentence October 3, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002696-2012

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 15, 2015**

Donald John Brill appeals from the judgment of sentence imposed by the Court of Common Pleas of Lancaster County following his conviction for possession with intent to manufacture or deliver,[1] intentional possession of a controlled substance by a person not registered,[2] and one count of possession of drug paraphernalia.[3]  After careful review, we affirm.

The underlying facts of the case are as follows.  On February 10, 2012, at 10:25 a.m., East Earl Township Police Officer Daniel Nipper responded to an ambulance assist call at 1081 Weaverland Road.  When he arrived on the

_____

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(2).

scene he was met by Sandra Baumer, who explained that she called 9-1-1 because she was unable to contact her sister, Carol Brill (Carol), who lived at the Weaverland Road address. She told Officer Nipper that Carol had a recent medical issue that caused her to faint unexpectedly. Baumer also told him that there was an unlocked window at the rear of the property.

Also present at the scene was Carol's neighbor Eugene Nolt, who Officer Nipper knew to be a first responder with the fire company. Because Nolt is of smaller stature than Officer Nipper, Nolt climbed in through the unlocked window and went to the front door, which he opened for Officer Nipper. Upon entering, Office Nipper announced the presence of police and emergency medical personnel. He received no response.

Office Nipper searched the kitchen, the dining room and a bedroom later identified as Carol's. He then moved on to a bedroom later identified as Brill's, where he saw rolling papers, a rolling machine and other assorted paraphernalia, and a quart size Mason jar containing marijuana. He opened a closet that had a chair in front of it, and found two glass jars on a shelf containing what appeared to be marijuana. He then checked the bathroom through which Nolt had entered. Having not found anyone on the first floor, he proceeded to the second floor, where he again found no one.

When Officer Nipper returned to the first floor, he met Nolt, who told him there was something in the basement he needed to see. Officer Nipper went into the basement where he found three potted marijuana plants surrounded by a makeshift curtain.

Satisfied that no one was in the house, Officer Nipper confiscated the marijuana and paraphernalia, and left the house, leaving behind his business card. Carol called Officer Nipper around noon that day and came down to the station to talk to him. After she told him that Brill grows marijuana in the house, he asked if she would consent to a search of the house. She then signed a voluntary search form.

During the search, Carol showed him bags of marijuana in the drawer of a cupboard in the living room. In the bar area of the basement, she also pointed out a key on a keychain made of a clear plastic box with what appeared to be a marijuana cigarette inside it. Office Nipper left the house with these items.

Brill later contacted Officer Nipper, and he agreed to have Officer Nipper come back and use the key to search a locked area of the residence. When Brill opened the locked room, Office Nipper saw equipment and paraphernalia used to cultivate marijuana. Brill was subsequently charged with possession with intent to deliver, possession of a controlled substance and possession of drug paraphernalia.

The trial court held a suppression hearing on May 10, 2013, and by opinion and order dated July 3, 2013, it held that all items seized from the house were admissible except for the items Officer Nipper found in Brill's bedroom closet.

On October 3, 2013, following a stipulated bench trial, the court found Brill guilty of the aforementioned offenses and imposed an aggregate

sentence of two years' probation, a $300.00 fine, costs and mandatory DNA sampling.

Brill filed a timely appeal in which he raises the following issues for our review:

1. Whether the lower court erred when it found the police had objectively reasonable grounds to effectuate a warrantless entry of [Brill's] residence based on a perceived medical emergency?

2. Whether the lower court erred when it found the search of Brill's residence did not unlawfully expand in nature and scope beyond the initial warrantless entry's medical emergency-based necessity, specifically, when an officer searched [Brill's] basement after explicitly being informed that there was no longer a basis to conclude a medical emergency existed?

Appellant's Brief, at viii.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context pf the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Farnan***, 55 A.3d 113, 115 (Pa. Super. 2012) (citation omitted).

The basic principles underlying our decision in this matter have been summarized by the Pennsylvania Supreme Court as follows:

> Warrantless entries or searches are *per se* unreasonable under our federal and state Constitutions, albeit subject to certain delineated exceptions. One such exception exists when there is both probable cause and exigent circumstances sufficient to excuse obtaining a warrant. ***Commonwealth v. Wright***, 961 A.2d 119, 137 (Pa. 2008). The U.S. Supreme Court has recognized that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." ***Mincey v. Arizona***, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). ***See also Commonwealth v. Miller***, 724 A.2d 895, 900 (Pa. 1999) (limited number of circumstances will excuse police from compliance with Fourth Amendment warrant and probable cause requirements; one such circumstance occurs when police reasonably believe that someone within residence is in need of immediate aid); ***Commonwealth v. Norris***, 446 A.2d 246, 248 (Pa. 1982) (warrantless entry into residence may be permitted, *inter alia*, "when the officers may in good faith believe that they or someone within are in peril of bodily harm."); *accord* ***Commonwealth v. Galvin***, 985 A.2d 783, 795–96 (Pa. 2009).

***Commonwealth v. Davido***, 106 A.3d 611, 622 (Pa. 2014).

In ***Brigham City v. Stuart***, 457 U.S. 398 (2006), the Supreme Court held law enforcement officers "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." ***Id***. at 403. "Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." ***Michigan v. Fisher***, 588 U.S. 45, 49 (2009) (internal quotation

omitted). The test is not what the officer "believed, but whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." *Id*. (citations and quotation omitted). It is error for a court "to replace that objective inquiry into appearances with its hindsight determination that there was in fact no emergency." *Id*.

In *Commonwealth v. Maxwell*, 477 A.2d 1309 (Pa. 1984), citing *Mincey*, *supra* and *Norris*, *supra*, our Supreme Court reiterated that in a life-threatening emergency, it is proper for police to make a warrantless search of a residence.

In *Miller*, *supra*, the trial court denied a defense motion to suppress evidence from a search of a house that the police entered after receiving information from a relative that the residents might require help. On appeal, our Supreme Court affirmed, noting:

> This was not a case in which the police created their own exigency and acted upon it; rather the police acted in response to the urging of Miller's family and based upon a reasonable belief that the Millers were inside and in need of assistance. Hence, the trial court's finding of exigent circumstances is supported by the record.

*Miller*, 724 A.2d at 900.

In the instant matter, as in *Miller*, the search of the house came in response to a report by a concerned family member who was unable to contact a resident. Here, Baumer told police that she was unable to contact her sister, whose car was at the residence. In addition, she expressed concern that her sister had been suffering from fainting spells recently.

Further, this was not a case where the police caused the exigency or took advantage of a relative's concerns to gain entry to a house for the purpose of finding a suspect or evidence of a crime therein.

From the cases cited herein, we glean that where police officers acting in good faith reasonably believe that an individual may be in need of medical assistance, an exception to the warrant requirement exists. Such was the case here, where Officer Nipper acted on information from Baumer that she was unable to reach her sister Carol by phone, Carol's car was parked in front of the house but no one answered the door, and Carol had "a recent medical issue with her fainting unexpectedly." N.T. Suppression Hearing, 5/10/13, at 5. Based on an objective inquiry into appearances, rather than hindsight, Officer Nipper acted in good faith on a reasonable belief that someone in the house needed medical assistance. **See Fisher**, **supra**. Accordingly, the trial court did not err by finding that the officer's entry into the home was permissible.

Having determined that the entry into the house was lawful, the trial court concluded that almost all of the contraband that Officer Nipper seized was proper under the plain view exception to the Fourth Amendment warrant requirement.[4]

_____

[4] The trial court determined that Officer Nipper improperly opened a two-foot by two-foot closet in front of which a chair had been placed. Accordingly, it suppressed the marijuana found inside the closet.

We apply the following test to determine whether a search falls within the plain view exception:

> For the exception to be present, initially, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Moreover, two additional conditions must be satisfied to justify the warrantless seizure. First, the incriminating character of the item must be immediately apparent. Also, the officer must have a lawful right of access to the object itself.

**Commonwealth v. Turner**, 982 A.2d 90, 92 (Pa. Super. 2009) (quotations and citations omitted).

As a preliminary matter, we have already determined that Officer Nipper did not violate the Fourth Amendment when he entered the house. We agree with the trial court that the incriminating nature of the marijuana and paraphernalia were clear to the officer, who testified that he is familiar with what marijuana looks life. N.T. Suppression Hearing, 5/10/13, at 5-6.

Officer Nipper testified that in an attempt to find Carol, he searched the downstairs of the house (the kitchen, the dining room, Carol's bedroom, Brill's bedroom and the bathroom). Because his presence in those rooms was lawful, he properly seized items in plain view.

Officer Nipper then proceeded upstairs where additional bedrooms were located. When he returned downstairs, Nolt told him there was something he needed to see in the basement. As the trial court notes, "Nolt never specified if he had found Mrs. Brill's body." Trial Court Opinion, 12/26/13, at 4. Officer Nipper went into the basement for a legitimate

purpose, and it was reasonable for him to look behind the curtain where he discovered the three marijuana plants.

The trial court did not err or abuse its discretion in holding that Officer Nipper's entry into the home without a warrant was appropriate under the circumstances.  Because Officer Nipper was legitimately in Brill's house, the seizure of contraband that was in plain view was permitted under **Turner**, **supra**.

Judgment of sentence affirmed.

Judge Musmanno joins the majority.

Judge Wecht files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/15/2015