J-S05023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VANESSA ANN MOORE, | |
| Appellant | No. 561 MDA 2015 |

Appeal from the Judgment of Sentence November 25, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005371-2013

BEFORE:  BENDER, P.J.E., SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED FEBRUARY 22, 2016**

Vanessa Ann Moore ("Appellant") appeals from the judgment of sentence imposed on November 25, 2014, after a jury convicted her of multiple drug offenses.  We affirm in part and vacate in part.

This case arises out of a shooting incident in Reading, Pennsylvania, at 2:40 a.m. on February 21, 2013.  In response to a report of shots fired, Reading Police Officer Christopher Dinger proceeded to the Queen City Diner.  There, witnesses told the officer about a black man with dreadlocks in a grey hoodie who ran into the diner claiming he had been shot, then left the diner and drove off in a black SUV.  Officer Dinger was then dispatched to Reading Hospital where a man fitting the victim's description was being

---

[*]  Retired Senior Judge assigned to the Superior Court.

treated for gunshot wounds. Officer Dinger identified the victim as Kevin Douglas McGee ("McGee"), who informed the officer that he had been shot near Topher's bar in Reading, and that his address was 536 Fern Avenue, Reading, Pennsylvania. Officer Dinger and several other officers proceeded to 536 Fern Avenue. While checking the area around the house, Officer Dinger observed a white Lincoln Navigator parked in an alley behind the residence and a black Cadillac Escalade parked inside an open garage behind the residence. The Navigator was registered to Appellant, and the Escalade was registered to Appellant's mother, Rosalie Moore. The officer observed what he believed to be blood on the console of the Navigator. He also observed a flat tire on the Escalade, bullet holes in the front driver's side panel, fresh tire tracks into the garage, a warm engine, and a small pool of water under the tailpipe. Inside the Escalade, Officer Dinger saw a black book bag on the floor of the passenger side front seat. Both vehicles were towed to a local garage while the police applied for a search warrant.

Inside 536 Fern Avenue, Reading Police Officer Kyle Kunkle encountered Appellant, co-defendant Erica Henderson, Ms. Henderson's two young daughters, and Veronica Ortega. He also found a loaded .380 Bersa handgun on the living room sofa that was registered to Appellant. Appellant told Officer Kunkle that McGee used the residence for mail, but he had not lived there for a long time. In a second floor bedroom, the police found, *inter alia*, a safe containing pills and baggies.

Investigator Joseph Snell assisted in executing the search warrant for the Escalade. He recovered a black book bag, which he admittedly opened, observing inside what he believed to be drugs and drug paraphernalia. He returned the bag to the vehicle until an additional search warrant could be secured. With a second search warrant, Criminal Investigator ("C.I.") Kevin Haser recovered the black book bag, which contained multiple baggies of crack cocaine and powder cocaine, four handguns, a scale, spoons, plates, razor blades, "Black Molly" pills, empty blue and green baggies, and ammunition. Fingerprints recovered from the black book bag and its contents belonged to co-defendant Henderson.

C.I. Haser filed a nine-count information against Appellant on July 24, 2013. Appellant filed an *omnibus* pretrial motion on December 5, 2013, seeking the suppression of drug and contraband evidence. The trial court held a hearing on the suppression motion on January 9, 2014, and, following the submission of briefs, denied the motion to suppress on May 1, 2014. Following her jury trial and conviction of five drug offenses[1] on August 29, 2014, the trial court sentenced Appellant to incarceration for an aggregate term of four to eight years on November 25, 2014. The sentence did not

---

[1] The five convictions were for possession with intent to deliver—cocaine ("PWID"), 35 P.S. § 780-113(a)(30); conspiracy to commit PWID—cocaine, 18 Pa.C.S. § 903; possession—cocaine, 35 P.S. § 780-113(a)(16); conspiracy to commit possession of cocaine, 18 Pa.C.S. § 903; and possession—Black Molly, 35 P.S. § 780-113(a)(16).

include a minimum sentence under the Recidivism Risk Reduction Incentive ("RRRI") Program. Defense counsel withdrew with the trial court's permission, and appellate counsel was appointed. This appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following questions for our review:

1. Whether Trial Court erred in denying and dismissing [Appellant's] omnibus pre-trial motion.

2. Whether the trial court erred in failing to address the omnibus pre[-]trial motion issue that the search of [A]ppellant's garage was an illegal and unlawful entry into the property done without a search warrant and with[out] exigent circumstances and without probable cause. All later searches and search warrants being fruits of the poisonous tree arising from the initial illegal entry and illegal search of the garage.

3. Whether the Trial Court erred in dismissing juror #1 over the objections of counsel and with lawful or good cause.

4. Whether the evidence adduced at trial was sufficient to support the jury's verdict on all the charges as the Commonwealth failed to establish constructive possession (no evidence of knowledge or intent to control) drugs and weapons found inside the black bag found inside a black Cadillac Escalade.

5. Whether the Trial Court failed to impose a RRRI eligible sentence where the sentence was not imposed as a mandatory sentence and Appellant was not barred by statute. The sentence is illegal since it does not impose a RRRI range.

Appellant's Brief at 4–5 (emphasis omitted).

When, as here, an appellant raises both a sufficiency-of-the-evidence issue and a suppression issue, we address the sufficiency of the evidence

- 4 -

supporting the conviction first, and we do so without a diminished record. Rather:

> we are called upon to consider all of the testimony that was presented to the jury during the trial, without consideration as to the admissibility of that evidence. The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

*Commonwealth v. Sanford*, 863 A.2d 428, 431–432 (Pa. 2004) (emphasis in original). Thus, we begin by addressing the sufficiency of the evidence, as "[t]he Double Jeopardy Clause bars retrial after a defendant's conviction has been overturned because of insufficient evidence." *Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) (citations omitted).

Appellant argues that the evidence was insufficient because the Commonwealth failed to establish her knowledge of, or ability and intent to exercise control over, the drugs in the book bag. Appellant's Brief at 13. Contrarily, based on Appellant's connection to both vehicles and to the drugs and paraphernalia recovered from the book bag and Appellant's home, the trial court concluded that the evidence was sufficient to sustain Appellant's convictions. Trial Court Opinion, 5/14/15, at 30–31.

> Our standard of review in a sufficiency of the evidence challenge is to determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The

> trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.
>
> **Commonwealth v. Newton**, 994 A.2d 1127, 1131 (Pa.Super.2010), *appeal denied*, 608 Pa. 630, 8 A.3d 898 (2010), quoting **Commonwealth v. Pruitt**, 597 Pa. 307, 318, 951 A.2d 307, 313 (2008) (citations omitted). The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant. **Commonwealth v. Markman**, 591 Pa. 249, 270, 916 A.2d 586, 598 (2007).

**Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013).

Appellant was not in physical possession of the book bag; therefore, the Commonwealth was required to establish that she had constructive possession of the seized items to support her convictions.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super.2012), *appeal denied*, ––– Pa. ––––, 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. **Commonwealth v. Sanes**, 955 A.2d 369, 373 (Pa.Super.2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

- 6 -

***Hopkins***, 67 A.3d at 820–821. Where more than one person has access to the contraband, presence alone will not prove conscious dominion over the contraband. ***Commonwealth v. Bricker***, 882 A.2d 1008, 1016 (Pa. Super. 2005) (citation omitted). "Rather, the Commonwealth must introduce evidence demonstrating either Appellant's participation in the drug-related activity or evidence connecting Appellant to the specific room or areas where the drugs were kept." ***Id.*** (citation omitted).

Additionally, the Commonwealth charged Appellant as a conspirator with McGee and Henderson in drug-related activity. In order to convict a defendant as a conspirator, the Commonwealth must prove: (1) that the defendant intended to commit or aid in the commission of the criminal act; (2) that the defendant entered into an agreement with another to engage in the crime; and (3) that the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed-upon crime. ***Commonwealth v. Smith***, 985 A.2d 886, 895 (Pa. 2009); 18 Pa.C.S. § 903.

The Commonwealth presented the following evidence of Appellant's connection to specific rooms or areas where the vehicles, firearms, drugs, and paraphernalia were found. ***Bricker***, 882 A.2d at 1016. Appellant owned the residence at 536 Fern Avenue. N.T. Suppression, 1/9/14, at 71. McGee's address was 536 Fern Avenue. N.T., 8/26–29/14, at 137. The Navigator was parked behind Appellant's residence, and the Escalade was

- 7 -

parked in the detached garage. *Id.* at 141. Appellant's mother owned the Escalade, and McGee drove it on the night he was shot near Queen City Diner. *Id.* at 288, 351. One of the guns recovered from the book bag was registered to Appellant. *Id.* at 436–437, 445. Henderson lived at 536 Fern Avenue, she was home on the night in question, and her fingerprints were on the contraband found in the book bag. N.T. Suppression, 1/9/14, at 76; N.T., 8/26–29/14, at 309, 516–518. In Appellant's home, the police recovered drugs, including pills found in the bedroom Appellant shared with McGee; the pills matched the Black Mollies recovered from the book bag. *Id.* at 342–343. Apple logo baggies containing crack cocaine recovered from the book bag matched apple logo baggies found inside Appellant's residence. *Id.* at 450. The police recovered drug paraphernalia and ammunition in the basement. *Id.* at 420–421. The ammunition was capable of being loaded into the guns recovered from the book bag. *Id.* at 451.

Upon review of the record, we agree with the trial court that the evidence was sufficient to sustain Appellant's convictions. The Commonwealth proved beyond a reasonable doubt that Appellant was involved in drug-related activity along with McGee and Henderson at Appellant's residence, 536 Fern Avenue. As a co-conspirator, Appellant was liable for possession of the drugs and contraband found in the book bag that were handled by Henderson and transported by McGee.

Next, we consider Appellant's allegation that the trial court erred in denying her suppression motion. Appellant argues that police searches of the garage and 536 Fern Avenue violated her constitutional rights because the police "did not have a warrant or permission to cross the threshold into the garage . . . [or] a warrant when they entered the house at Fern Avenue." Appellant's Brief at 12. Appellant further argues that the warrant supporting the search of 536 Fern Avenue "was defective in that it lacked probable cause to believe that contraband or evidence of a crime would be found at that particular place." *Id.* at 12.

In response, the Commonwealth argues that the police did not violate Appellant's rights by crossing the garage threshold because the Escalade was in plain view from outside of the garage. Commonwealth's Brief at 14. Additionally, the Commonwealth contends that Appellant voluntarily allowed the police officers to enter her residence and that the search warrant for 536 Fern Avenue was supported by probable cause. *Id.* at 19.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established:

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1203 (2007) (citing *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004)). Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* However, it is also well settled that an appellate court is not bound by the suppression

court's conclusions of law. *Id.* (*citing Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455 (2003)).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this Court.

*Commonwealth v. Benton*, 440 Pa.Super. 441, 655 A.2d 1030, 1032 (1995) (citations omitted). In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa.Super.2003). In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 622 Pa. 126, 79 A.3d 1073, 1088–1089 (2013).[1]

> [1] Our Supreme Court in *L.J.* clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. The suppression hearing in this case post-dates *L.J.*, so *L.J.* is applicable here. *Commonwealth v. Davis*, 102 A.3d 996, 999 n. 5 (Pa.Super.2014).

*Commonwealth v. Caple*, 121 A.3d 511, 516–517 (Pa. Super. 2015).

Following the suppression hearing, the trial court opined as follows regarding police interaction with the Escalade:

> Officers initially arrived at 536 Fern Avenue in response to a shooting investigation involving Mr. McGee. As Mr. McGee refused to provide any relevant information relating to the incident, officers followed up their shooting investigation at the only residence known to be associated with Mr. McGee. Since hospital staff informed police that Mr. McGee had been dropped

off at the hospital by a white SUV with large chrome rims, it was a natural investigatory response for the officers to search the residential area for that type of vehicle. Once Officer Dinger located a white Lincoln Navigator, matching the hospital description and in close proximity to the residence, he saw in plain view what he thought was blood on the center console. While Officer Dinger continued his investigation of the perimeter of the residence, he also observed a black Cadillac Escalade inside the open, detached garage of the residence, which appeared to have a flat tire and bullet holes in the driver's side door. It also appeared that the black Escalade had recently been driven [based on] Officer Dinger's [observation] that the hood was still warm as he approached the vehicle. Based on the entirety of Officer Dinger's observations, officers properly seized the vehicles, pending search warrant applications to search for evidence relative to the shooting investigation.

Findings of Fact and Conclusions of Law, 5/1/14, at 9–10.

We apply the following test to determine whether the plain-view exception to the warrant requirement applies to the case at bar:

For the exception to be present, initially, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Moreover, two additional conditions must be satisfied to justify the warrantless seizure. First, the incriminating character of the item must be immediately apparent. Also, the officer must have a lawful right of access to the object itself.

*Commonwealth v. Turner*, 982 A.2d 90, 92 (Pa. Super. 2009) (quotation marks and citations omitted). "This doctrine rests on the principle that an individual cannot have a reasonable expectation of privacy in an object that is in plain view." *Commonwealth v. Winfield*, 835 A.2d 365, 369 (Pa. Super. 2003) (quoting *Commonwealth v. Ballard*, 806 A.2d 889, 891 (Pa. Super. 2002)).

- 11 -

Upon review of the suppression record, we conclude that the officers lawfully arrived at 536 Fern Avenue, McGee's known address, in furtherance of their search for the white Navigator identified by the hospital's security personnel. N.T. Suppression, 1/9/14, at 25, 26, 37, 65, 69, 70. Additionally, Officer Dinger observed the black Escalade in an open garage, a fact which negates Appellant's expectation of privacy. *Id.* at 27; *Winfield*, 835 A.2d at 369. The suspicious character of the bullet holes and the flat tire was immediately apparent to Officer Dinger from the alley. N.T., 1/9/14, at 27–29. Fresh tire tracks into the garage, a warm engine, and a pool of water under the tailpipe suggest that the Escalade was recently parked in the garage. *Id.*; Commonwealth's Exhibit 3 (Affidavit of Probable Cause), 2/21/13, at 2. We emphasize that nothing in the record indicates that Officer Dinger searched the garage. Rather, he "walked into the garage far enough to see in the [Escalade] to make sure there was no injured persons inside the car relative to the bullet hole." N.T. Suppression, 1/9/14, at 28, 36. Seeing no one, Officer Dinger secured both vehicles and waited for search warrants. *Id.* at 28–29. Thus, we further conclude that Officer Dinger had a lawful right of access to the vehicle itself and he did not violate Appellant's rights by crossing the garage threshold.

With regard to entry of 536 Fern Avenue, the trial court wrote, "C.I. Perkin's [sic] indicated that [Appellant] allowed officers to come into the house to discuss the shooting investigation." Findings of Fact and

Conclusions of Law, 5/1/14, at 11. The suppression record supports the trial court's finding. N.T., 1/9/14, at 96; Commonwealth Exhibit 3 (Affidavit of Probable Cause), 2/21/13, at 3. We conclude, therefore, that Appellant's challenge to the initial entry of her residence is disingenuous.

Appellant also challenges the search warrant for 536 Fern Avenue as "defective in that it lacked probable cause to believe that contraband or evidence of a crime would be found at that particular place." Appellant's Brief at 12. In response, the trial court opined as follows:

> The information contained within the search warrant for the residence established probable cause. C.I. Perkins and the other officers' observations at the residence, which were set forth in his supporting affidavit, established a fair probability that [Appellant] was involved in criminal activity. Although C.I. Perkins did not include the information relating to finding red fluid in the cleaning bucket in his report, his supporting affidavit of probable cause does include such information. (Commonwealth Exhibit 3, p. 3). Furthermore, C.I. Perkins clarified this discrepancy at the pretrial hearing, testifying that he did in fact see blood droplets in the cleaning solution. . . . In addition to observing the cleaning solution inside the residence and Appellant's attempt to destroy evidence, both of the vehicles were in close proximity to the residence as well. [Appellant] also advised the officers that there was a loaded handgun in the living room of the house. After the firearm was seized, [Appellant] became uncooperative and could not confirm Mr. McGee's whereabouts. Based on the totality of the circumstances, there was sufficient information available to the magistrate to establish the probability that criminal activity existed within the residence. C.I. Perkins['] observations inside the residence combined with the additional facts setting forth [Appellant's] relationship to the vehicles led the magistrate to conclude there was a fair probability that contraband or evidence of a crime would be found in the residence. Therefore, the warrant for the residence was properly issued.

Findings of Fact and Conclusions of Law, 5/1/14, at 11–12.

"In order to obtain a valid search warrant, the affiant must establish probable cause to believe that execution of the warrant will lead to the recovery of contraband or evidence of a crime." *Commonwealth v. Janda*, 14 A.3d 147, 157 (Pa. Super. 2011). We review the issuing authority's decision in light of the totality of the circumstances:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983), the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non-technical manner.

*Caple*, 121 A.3d at 520 (quoting *Janda*, 14 A.3d at 157–158).

Our review of the certified record reveals support for the trial court's findings of fact. *See* Commonwealth's Exhibit 3 (Affidavit of Probable Cause), 2/21/13, at 2–3 (summarizing events surrounding shooting and police investigation of 536 Fern Avenue). The affidavit of probable cause provided the magistrate with information about an uncooperative shooting victim; two vehicles (one with bullet holes and one with a blood-like smudge) connected to the victim and his residence; an uncooperative woman connected to the victim, the vehicles, and the residence; signs of

recently destroyed evidence; and a loaded weapon in the residence. When viewed in a commonsense, non-technical manner, such information suggests a fair probability that contraband or evidence of a crime will be found inside 536 Fern Avenue. Therefore, we discern no error in the trial court's legal conclusion that the warrant for 536 Fern Avenue was supported by probable cause.

In sum, the warrantless entries into Appellant's garage and residence did not violate her constitutional rights, and the search warrant for 536 Fern Avenue was supported by probable cause. Thus, we hold that the trial court did not err in denying Appellant's motion to suppress.

Appellant next challenges the trial court's decision to remove Juror Number One on the second day of trial and replace her with an alternate juror. Appellant's Brief at 16. In essence, Appellant complains that the trial court did not inquire into alternatives to removal of Juror Number One and that the removal was not supported by evidence of good cause. *Id.* at 16, 17.

According to the record, the trial judge instructed the jury on the first day of trial that court "usually" adjourned at 5:00 p.m., but that he was "not going to guarantee" that he would do that tomorrow because he "certainly want[ed] to get this case finished by Friday" due to the holiday weekend, and he "won't be able to continue with the trial on Thursday" due to a full schedule. N.T., 8/26–29/14, at 49. The jury was excused at 4:58 p.m. on

- 15 -

the first day of trial, but the second day of trial ran longer. N.T., 8/26–29/14, at 56, 336. Juror Number One explained her inability to remain in the court room after 6:00 p.m. on the second day, as follows: "I am the only one that can watch my granddaughter who was very sick when she was born, and I am the only one who can take her. And my daughter has to be at school." N.T., 8/26–29/14, at 337. Defense counsel objected to Juror Number One's removal, suggesting instead that they adjourn for the evening so Juror Number One could meet her obligation and then return on Friday for the third day of trial. *Id.* at 338–339. Unpersuaded, the trial court excused Juror Number One *sua sponte* "based upon the court's schedule and the delays . . . in this trial up to this point and the calendar including the upcoming holiday weekend." *Id.* at 339. The court adjourned at 7:35 p.m. that evening. *Id.* at 382.

The trial court explained its removal of Juror Number One as follows:

> After review of the record, it is apparent that Juror #1 properly informed the trial court of the issue she faced at home if she was forced to stay past 6:00 p.m. on the second day of trial. The trial court excused the juror and the juror's place was taken by the first alternate juror. The contention that the trial court committed reversible error is unfounded since Juror #1 was excused due to a long standing commitment to take care of her sick granddaughter and she evidently did not expect the trial to last as long as it did that second evening. Furthermore, the trial court recognized its intention to finish the jury trial before the three-day holiday weekend so as to avoid juror confusion and/or forgetfulness. The jury trial consisted of three co-defendants who were each charged with various offenses. The trial court believed the jury was more likely to give their full attention to the complicated evidence if the trial completed prior to the eventual three-day holiday break. Due to the scheduling

> obstacles and Juror #1's family predicament, there was nothing improper in the court's handling of this matter. The court did not abuse its discretion when it excused Juror #1 for these reasons and replaced Juror #1 with an alternate juror.

Trial Court Opinion, 5/14/15, at 26.

"Pursuant to Pa.R.Crim.P. [645(a)], a trial court may seat an alternate juror whenever a principal juror becomes unable or disqualified to perform his duties." ***Commonwealth v. Williams***, 720 A.2d 679, 684 (Pa. 1998). "This discretion exists even after the jury has been impaneled and the juror sworn." ***Commonwealth v. Carter***, 643 A.2d 61, 70 (Pa. 1994) (citation omitted). The trial court's discretion in this regard must be based upon a sufficient record of competent evidence to sustain removal. ***Id.*** at 70 (citation omitted). The trial court's decision to discharge a juror will not be reversed absent a palpable abuse of discretion. ***Commonwealth v. Treiber***, 874 A.2d 26, 31 (Pa. 2005).

Upon review, we conclude that the trial court's decision to remove Juror Number One is based upon a sufficient record of competent evidence. Juror Number One testified that, because her daughter had to go to school, she was the only person available to watch her sick granddaughter. The trial court referenced its heavy schedule and its desire to complete the trial before the holiday weekend. The trial involved multi-defendants charged with various offenses and required the undistracted attention of the jurors. Moreover, Appellant failed to demonstrate how she was prejudiced as a result of the removal of Juror Number One and the seating of an alternate

juror. In light of this record, we discern no abuse of the trial court's discretion. Thus, we conclude that Appellant's challenge to the removal of Juror Number One warrants no relief.

Finally, Appellant asserts that the trial court erred in applying a drug-weight mandatory minimum sentence because the drug-trafficking sentencing statute was declared unconstitutional several days before Appellant's sentence. Appellant's Brief at 18–19. *See Commonwealth v. Fennell*, 105 A.3d 13, 17 (Pa. Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015) (holding 18 Pa.C.S. §§ 7508(a)(7)(i) and 7508(b) unconstitutional). Rather, Appellant contends, the trial court should have applied an RRRI minimum sentence. Appellant's Brief at 18–19.

According to the Commonwealth, Appellant "was not sentenced to a RRRI minimum in this matter because of 'weight.' This mere statement would not appear to be sufficient to make a determination of [Appellant's] eligibility in either direction." Commonwealth's Brief at 29. Thus, the Commonwealth acknowledges that "remand for further investigation as to whether or not [Appellant] is an eligible offender would appear to be appropriate." *Id.* Similarly, the trial court "requests a remand for RRRI review and consideration" because, "[a]t the Sentencing Hearing on November 25, 2014, neither Appellant nor the Commonwealth gave an indication of RRRI eligibility." Trial Court Opinion, 5/14/15, at 32.

Consequently, we are constrained to vacate the judgment of sentence and remand for consideration of Appellant's RRRI eligibility.

Judgment of sentence affirmed in part, vacated in part, and remanded for consideration of Appellant's RRRI eligibility. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2016