J-S02001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JONATHAN NUNEZ, | |
| Appellant | No. 3141 EDA 2014 |

Appeal from the Judgment of Sentence August 30, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004281-2012

BEFORE:  SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 15, 2016**

Jonathan Nunez ("Appellant") appeals from the judgment of sentence entered after a jury convicted him of first degree murder for the death of Kimberly Cardona ("the victim").  We affirm.

The trial court has provided a detailed account of the facts in its opinion filed pursuant to Pa.R.A.P. 1925(a).  Trial Court Rule 1925(a) Opinion, 12/18/14, at 5–12.  Thus, we need only provide a brief summary, as follows:  David Bonaskiewich was walking his dogs on Lanze Road, Salisbury Township, Lehigh County, Pennsylvania, between 7:00 and 8:00 p.m. on July 5, 2012.  One of the dogs stopped and stared intently into a wooded area along the road.  From his position on the side of the road, Mr. Bonaskiewich observed a human body ten to fifteen feet into the woods.  Mr. Bonaskiewich called his wife, and she contacted the police.

The police investigation led to identification of the victim and Appellant's arrest. Appellant confessed to killing the victim by beating her and cutting her throat; he also poured bleach on the body. Appellant was charged with one count of homicide. He filed omnibus pretrial motions, including a motion to suppress his statements to the police and physical evidence. The trial court conducted a hearing on March 11, 2013, and it denied Appellant's pretrial motions on April 19, 2013. Order and Opinion, 4/19/13.

Appellant's jury trial began on August 12, 2013, and the jury found him guilty of first degree murder on August 19, 2013. N.T., 8/12/13, at 2; N.T., 8/19/13, at 100.[1] The trial court sentenced Appellant to life imprisonment without the possibility of parole. Sentencing Order, 8/30/13. Appellant filed post-sentence motions on September 9, 2013, which the trial court denied on December 24, 2013. Order and Opinion, 12/24/13.

Between the filing of Appellant's post-sentence motions in September of 2013 and the trial court's decision thereon in December of 2013, Appellant filed a supplemental motion raising ineffective assistance of pretrial counsel. Additionally, trial and post-sentence counsel filed a motion to withdraw. The trial court held hearings on both motions. N.T., 11/1/13 and N.T., 12/10/13, respectively. Although the trial court permitted counsel

---

[1] The notes of testimony from Appellant's trial are incorrectly dated as September 12, 2013, through September 19, 2013.

to withdraw as Appellant's private attorney, it appointed him to represent Appellant through post-sentence motions and the filing of an appeal. Order, 12/10/13.

On May 19, 2014, Appellant informed the trial court by letter that counsel had not filed an appeal. In response, the trial court appointed a public defender to investigate Appellant's claim and file any appropriate motions. Order, 5/19/14. The next day, previous counsel acknowledged his failure to file Appellant's direct appeal and filed a notice of appeal *nunc pro tunc*. Memorandum in Support of Appeal Nunc Pro Tunc, 5/20/14, at ¶ 8; Notice of Appeal, 5/20/14. The trial court denied counsel's request for an appeal *nunc pro tunc*. Order, 5/22/14.[2] The public defender filed a petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, on May 22, 2014, alleging, *inter alia*, prior counsel's ineffectiveness for failing to file an appeal. PCRA Petition, 5/22/14. Following a hearing, and without objection from the Commonwealth, the trial court reinstated Appellant's appeal rights *nunc pro tunc*. Order, 6/27/14. Appellant filed a timely notice of appeal *nunc pro tunc* on July 1, 2014, and, along with the trial court, complied with Pa.R.A.P. 1925. Thus, this appeal is properly before us.

On appeal, Appellant presents the following questions for our review:

---

[2] We quashed previous counsel's notice of appeal *nunc pro tunc* as untimely. Order, 8/4/14.

A.    Was there sufficient evidence of the specific intent to kill necessary for murder in the first degree based upon the evidence of [Appellant's] intoxication and voluntary drug usage which mitigated against [Appellant] having the specific intent to kill?

B.    Was the jury's verdict of murder in the first degree against the weight of all the evidence as presented regarding the Appellant's intoxication and voluntary drug usage, and the facts of the case showing [Appellant] acted without specific intent to kill?

C.    Did the lower court err in denying [Appellant's] pre trial motion to suppress the usage of evidence found as a result of the search warrants which [Appellant] believes were improperly obtained or without sufficient probable cause to support the warrants?

D.    Whether the lower court erred in denying [Appellant's] motion in limine regarding the entry of tape recording and testimony from an undercover witness used by the prosecution to obtain statements from [Appellant] regarding the robbery and attempted homicide?[3]

Appellant's Brief at 8–9 (full capitalization omitted).

Where, as here, an appellant raises both a sufficiency issue and a

suppression issue, we address the sufficiency of the evidence supporting the

conviction first, and we do so without a diminished record.  Rather:

we are called upon to consider all of the testimony that was presented to the jury during the trial, *without consideration as to the admissibility of that evidence*.  The question of sufficiency is

_____

[3]   Appellant's fourth issue, as stated, bears no factual relationship to the case at hand.  However, in the corresponding argument section of his brief, Appellant argues that the trial court erred in denying his motion *in limine* to preclude "various specific Internet searches that occurred on [Appellant's] cellular phone. . ."  Appellant's Brief at 23–24.  Thus, we shall ignore what appears to be an editorial lapse.

- 4 -

not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

*Commonwealth v. Sanford*, 863 A.2d 428, 432 (Pa. 2004) (quoting *Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989)) (emphasis in original). Thus, we begin by addressing the sufficiency of the evidence, as "[t]he Double Jeopardy Clause bars retrial after a defendant's conviction has been overturned because of insufficient evidence." *Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007) (citations omitted).

Appellant argues that, due to alcohol consumption and drug use, "his higher cognitive functions would have been impaired and his ability to form any specific intent to kill the victim would have been compromised." Appellant's Brief at 19. The Commonwealth counters that "the physical evidence, along with [Appellant's] attempts to cover up his crime, flight from the country and subsequent detailed confession to police, clearly demonstrated he was not so intoxicated such that he lost his 'faculties and sensibilities.'" Commonwealth's Brief at 18.

To obtain a first-degree murder conviction, the Commonwealth must prove that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill. 18 Pa.C.S. §§ 2501, 2502(a). When reviewing sufficiency to support a jury's verdict of first degree murder:

this Court determines whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007) (citing *Commonwealth v. Crews*, 436 Pa. 346, 348, 260 A.2d 771, 771–72 (1970)). In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *See id.*, 928 A.2d at 1032–33; *Commonwealth v. Chmiel*, 585 Pa. 547, 574, 889 A.2d 501, 517 (2005).

*Commonwealth v. Reed*, 990 A.2d 1158, 1161 (Pa. 2010)

The trial court disposed of Appellant's sufficiency challenge as follows:

Evidence at trial established that during the course of an argument with the victim while they were on Lanze Road on July 4, 2012, the Appellant repeatedly struck and kicked the victim, until, in the Appellant's own words revealed in his audio/videotaped confession, he left her struggling for breath on the side of the roadway and left the scene. Further, his confession, shown to the jury, established that after leaving Lanze Road the first time, and treating his own injury sustained during the altercation, he returned to Lanze Road. There, he found [the victim] struggling for breath and dragged her beaten body into the woods approximately 10 to 15 feet. He then slashed her throat with a kitchen knife. After leaving Lanze Road the second time, the Appellant disposed of the knife and his clothing in the nearby Lehigh River. The Appellant then returned to Lanze Road on July 5, 2012 (a third time), to pour bleach over [the victim's] body.

The Commonwealth presented further evidence *via* the testimony of Dr. Land to establish the nature and severity of the bruises and abrasions suffered by [the victim]. In particular, Dr. Land testified that the trauma to the victim's face and neck alone [was] fatal. He also testified that the beating and neck slashing occurred pre-mortem.

Additionally, Marvin Benitez testified that while the Appellant was with him on July 5, 2012, the Appellant asked him if bleach removed fingerprints. Evidence was also presented that the Appellant made several inquiries from his text/Internet capable cellular telephone including, "How long does it take for semen to die," "Can people pull fingerprints off a dead bloody body," "Can you be IDed or traced by blood," "Can cops find you just by blood?" In short, the Commonwealth provided ample evidence to the Jury to establish that the Appellant had the specific intent to kill [the victim].

Trial Court Rule 1925(a) Opinion, 12/18/14, at 17–18.

Upon review of the certified record, we find no error in the trial court's ruling. The evidence presented at trial, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable a reasonable jury to find, beyond a reasonable doubt, that Appellant killed the victim with the specific intent to kill her. Appellant admitted to killing the victim. N.T., 8/16/13, at Commonwealth Exhibit 82. He beat the victim about her head, face, neck, arms, and chest, and then left her along the road. N.T., 8/15/13, at 129–131. Hours later, Appellant returned to the victim. She "was barely moving, gurgling, so he slit her throat and then left." *Id.* at 131. The next morning, Appellant returned to the scene and "poured bleach on the body." *Id.* at 132–133. Without hesitation, we conclude that Appellant's sufficiency claim lacks merit.

Appellant next challenges the weight of the evidence supporting his conviction.[4]  According to Appellant:

> [t]he evidence of his drinking heavily at the party and his smoking the synthetic marijuana, which alone can impair and degrade a person's emotion control, limited his ability to form any specific intent to kill [the victim].  He acted out of rage and anger and not the necessary component for Murder of the First Degree.  [Appellant] should have been granted a new trial to allow justice to be done and a verdict commensurate with the actual evidence to be rendered.

Appellant's Brief at 21.  In response, the Commonwealth states:  "Simply because the jury did not believe [Appellant's] arguments does not render the jury's verdict in this case unjust.  [Appellant] took full advantage of his opportunity to discredit the Commonwealth's witnesses and presented his version of events to the jury."  Commonwealth's Brief at 21.

As to a weight claim, a trial court employs the following standards:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.  Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.  An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror.  Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.  Rather, the role of the trial judge is to determine that

_____

[4]  Appellant preserved this issue by requesting a new trial pursuant to Pa.R.Crim.P. 607(A)(3). Post-sentence Motions, 9/9/13, at 2.

notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–752 (Pa. 2000) (citations, footnote, and internal quotation marks omitted). However:

[a]n appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. . . .

*Widmer*, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer***, 560 Pa. at 322, 744 A.2d at 753 (quoting ***Coker v. S.M. Flickinger Co.***, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (some internal citations omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings."

***Commonwealth v. Diggs***, 949 A.2d 873, 879-880 (Pa. 2008).

In denying Appellant's motion for a new trial, the trial court addressed Appellant's weight claim as follows:

> [Appellant] alleges that the Jury's determination that he acted with a specific intent to kill was in error because, at Trial, he presented evidence that he was intoxicated at the time of the murder. The Commonwealth, in its Brief, acknowledges that First Degree Murder may be mitigated to Third Degree Murder when the defendant establishes that he could not form the specific intent to kill due to a diminished capacity. However, the Commonwealth argues that pursuant to *Commonwealth v. Padilla*, [Appellant] must establish that "he was overwhelmed to the point of losing his faculties and sensibilities." 2013 WL 5848693 (Pa. 2013). "The value of such evidence is generally for the finder of fact, who is free to believe or disbelieve any, all, or none of the testimony addressing intoxication." [*Commonwealth v.*] *Blakely*[, 946 A.2d 645, 653 (Pa. 2008)] (citation omitted).
>
> In the instant case, the Jury heard testimony from Kaitlyn Schuster, [Appellant's] best friend, that she was with [Appellant] at a party at Marvin Benitez's home on July 4, 2012. While there, she saw [Appellant] consume alcoholic beverages and that she believed that [Appellant] was intoxicated. She stated that [Appellant] appeared clumsy and was slurring his words. Marvin Benitez testified that [Appellant] had consumed alcohol at his home and appeared intoxicated when he left the party at approximately 7 p.m. on July 4, 2012. Elizabeth Pelligrino, [Appellant's] then-girlfriend, testified that she had been with [Appellant] earlier in the day on July 4, 2012 and that she was aware that [Appellant] had been drinking on that evening, at the

- 10 -

party at Mr. Benitez's home. Further, she testified that [Appellant] used K2 (synthetic marijuana) on a regular basis and that he smoked K2 after his trip [to] the emergency room. Ms. Pelligrino testified that on the evening of July 4, 2012, [Appellant] appeared "tipsy" but that he was still "put together."

The Jury also heard testimony from Nancy Schneck, the treating nurse at Lehigh Valley Hospital Emergency Department who treated [Appellant] in the late evening of July 4, 2012. During her interview of [Appellant] at the hospital, he denied both alcohol and illicit drug use. In her opinion, [Appellant] appeared healthy, well-fed, alert and oriented. He did not fall, stagger, vomit, fall asleep, or require any assistance in his movement. When Ms. Schneck performed her fall risk assessment, [Appellant] appeared to have no risk of falling. Based on the above testimony, the Jury was given a voluntary intoxication jury instruction, explaining that First Degree Murder could be reduced to Third Degree Murder should the Jury believe that [Appellant] was sufficiently intoxicated. Based on the verdict rendered, it is clear that the jury rejected the evidence tending to show that [Appellant] may have been intoxicated on July 4, 2012, which was their prerogative as fact-finder.

Trial Court Post-sentence Motions Opinion, 12/24/13, at 13–14; Trial Court Rule 1925(a) Opinion, 12/18/14, at 15–17.

Upon review, we discern no abuse of the trial court's discretion in denying Appellant's challenge to the weight of the evidence. The trial court's summation of the trial evidence is supported by the record. Moreover, the jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant, as was its right. *Diggs*, 949 A.2d at 879. The jury weighed the evidence, credited the Commonwealth's case, and concluded that Appellant intentionally murdered the victim. This determination is not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact finder

and to reweigh the evidence. Accordingly, we conclude that Appellant is not entitled to relief on his weight claim.

In his third issue, Appellant challenges the denial of his motion to suppress evidence obtained by the police from his residence, his vehicle, his person, and his July 4, 2012 medical records. Appellant's Brief at 21. The standard of review we apply in addressing a trial court's denial of a suppression motion is limited to determining:

> whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. *Commonwealth v. Cruz*, 71 A.3d 998, 1002–03 (Pa.Super.2013).

*Commonwealth v. Eichler*, ___ A.3d ___, 2016 PA Super 21, at *1 (Pa. Super. filed Feb. 2, 2016).[5]

According to Appellant, the police officers lacked "sufficient probable cause to support the issuance of the warrants." Appellant's Brief at 21. "In order to obtain a valid search warrant, the affiant must establish probable

---

[5] "We recognize that our Supreme Court held in *In Re L.J.*, 79 A.3d 1073 (Pa.2013), that appellate review is limited to the suppression record in the absence of exceptional circumstances. *L.J.*, however, does not apply to the present case, because litigation in this case commenced before the Supreme Court issued its decision in *L.J.* Pre-*L.J.* decisions authorize us to include the trial record in our review." *Eichler*, 2016 PA Super 21, at *1.

cause to believe that execution of the warrant will lead to the recovery of contraband or evidence of a crime." **Commonwealth v. Janda**, 14 A.3d 147, 157 (Pa. Super. 2011). We review the issuing authority's decision in light of the totality of the circumstances:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in **Illinois v. Gates**, 462 U.S. 213 (1983), the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non-technical manner.

**Commonwealth v. Caple**, 121 A.3d 511, 520 (Pa. Super. 2015) (quoting **Janda**, 14 A.3d at 157–158).

In disposing of Appellant's suppression challenge, the trial court first summarized the common facts set forth in the affidavits of probable cause for the various search warrants, as follows:

> Specifically, the affidavit(s) related that members of the Salisbury Township Police Department were called to the 2700 block of Lanze Road on July 5, 2012 at approximately 8:33 p.m. There, they found a badly beaten body of a young female approximately 15 feet from the roadway. The victim was later identified as Kimberly Cardona. Police observed numerous injuries to the body and detected a very strong odor of bleach coming from the body. They also observed discoloration of the victim's clothing. A gray box cutter and the victim's cellular telephone were found at the scene.

The body was examined by Lehigh County Coroner Scott Grimm, who pronounced the victim dead and ruled the death a homicide.

An autopsy was performed on the body on July 6, 2012 by Dr. Samuel Land. Dr. Land determined the cause of death to be blunt force trauma to the head and neck and sharp force trauma to the neck. He ruled the manner of death homicide. Additionally, Dr. Land determined that the wounds present on the victim's hands and arms could be characterized as defensive wounds.

On July 7, 2012, an individual identified in the search warrant as E.P. (whose real identity was known to police)[9] spoke with police. E.P. told police that [Appellant] had contacted him/her by cellular telephone on July 4, 2012 at approximately 11:30pm for a ride to the hospital, telling E.P, that he had cut his hand. E.P. provided [Appellant] a ride from his home at 253 East Fairview Street, Allentown, PA to Lehigh Valley Health Network, located at 17th and Chew Streets, Allentown, PA. E.P. also noticed additional cuts and abrasions on [Appellant's] body. E.P. further told police that [Appellant] had seemed paranoid in the early morning hours of July 5, 2012, and that he told E.P. that he was cleaning/washing his car that morning. On July 6, 2012, [Appellant] informed E.P. that he had had a sexual encounter with the victim on July 3, 2012.

E.P. further told the police that [Appellant] utilizes a cellular telephone and drives a white Honda Accord. E.P. informed the police that [Appellant] keeps an older, gray box cutter inside of his vehicle. E.P. provided [Appellant] cellular telephone number to the police.

Police examined the victim's cellular telephone records and learned that 23 calls had been made from [Appellant's] cellular telephone to the victim's cellular telephone on July 4, 2012, with the last call occurring at approximately 7:16 p.m.

On July 6, 2012, police interviewed J.F. (whose real identity is known to police). J.F. stated that he/she was operating his/her car on Lanze Road on July 5, 2012 at approximately 1:30 p.m. when he/she observed a white vehicle in the driveway of 2710 Lanze Road, with one occupant. At a

- 14 -

lineup on July 7, 2012, J.F. immediately identified [Appellant] as that occupant.

Pennsylvania records indicate that [Appellant's] mother, Evelyn Nunez, is the registered owner of a white Honda Accord.

On July 9, 2012, police interviewed M.B. (whose real identity is known to police) who stated that he was at a party with [Appellant] on July 4, 2012 when he observed [Appellant] communicating with E.P. and the victim via cellular telephone. At approximately 10 p.m., [Appellant] became angry, told M.B. that he ([Appellant]) was going to see the victim and left the party.

On July 5, 2012, [Appellant] communicated with his employer that he had cut his hand and would not be reporting to work.

The authorities were unable to locate [Appellant] as of July 6, 2012.

Trial Court Pretrial Motions Opinion, 4/19/13, at 9–12. The trial court then explained its denial of suppression of the evidence recovered through execution of the search warrants:

Based on the facts highlighted above in the affidavit, the Honorable Robert L. Steinberg issued a search warrant for [Appellant's] residence at 253 East Fairview Street, Allentown, PA on July 11, 2012. As a result of the search warrant, police seized bed sheets, towels and shirts containing what appeared to be blood, a bottle of partially empty Clorox bleach with what appeared to be blood on the exterior of the bottle, and various electronic items. This information was included in the affidavit for the search warrant issued on July 12, 2012 for [Appellant's] medical records from Lehigh Valley Health Network. That search warrant was also issued by the Honorable Robert L. Steinberg.

Additionally, the items found in [Appellant's] home were included in the affidavit attached to the search warrant issued on July 16, 2012 for the 1998 Honda Accord, owned and registered to [Appellant's] mother, Evelyn Nunez. Also within that affidavit were additional facts. Specifically, police indicated that they had been contacted by members of the New York City Police

- 15 -

Department that the 1998 white Honda Accord in question had been recovered in the Bronx, NY and had obtained written voluntary consent from Ms. Nunez (with the consent of her attorney) to search the car on July 13, 2012. On July 15, 2012, Detective Salgado retrieved the car from an impound lot in the Bronx, NY and took the vehicle to the secure garage at the Salisbury Township Police Department. Again, the Honorable Robert L. Steinberg issued the warrant.

On August 1, 2012, police sought an additional search warrant to obtain a sample of [Appellant's] DNA and to photograph any and all injuries on [Appellant's] body. Included in that affidavit was the information above, as well as the results of the July 17, 2012 search of the 1998 Honda Accord. During that search, police found blood inside the vehicle on both the driver and passenger side[s] of the car and samples of the blood were taken.

After careful review of the information included in the affidavits of probable case attached to each search warrant, and using a "totality of the circumstances" test, it is clear that each affidavit contains sufficient facts and inferences derived from those facts to establish probable cause for the issuance of the warrants for [Appellant's] residence, medical records, vehicle, and his person. The police have established that the crime of homicide has been committed and that [Appellant] is most likely the one who committed the crime. They have also provided sufficient facts that the issuing authority (in this case, Common Pleas Judge Robert L. Steinberg) could determine that the contraband to be seized was in the specified place which was the subject of the warrants. Therefore, the evidence seized as a result of the search warrants shall not be suppressed.

*Id.* at 12–14.

Our review of the certified record reveals testimonial support for the trial court's factual summary and the existence of the challenged affidavits of probable cause. *See* N.T. Suppression, 3/11/13, at 19, 25, 31, 62, 79–80 (marking of Commonwealth's Exhibits C-3, C-4, C-6, and C-10 (affidavits of probable cause)). However, the certified record does not contain the actual

affidavits of probable cause. We reiterate that an appellant bears responsibility to ensure that this Court has the complete record necessary to properly review a claim. *Commonwealth v. Whitaker*, 878 A.2d 914 (Pa. Super. 2005). The record clearly indicates that affidavits of probable cause were prepared and that search warrants were issued and executed. N.T., Suppression, 3/11/13, at 19, 25, 31, 62, 79–80; N.T. Trial, 8/13/14, at 102, 122, 146–148, 156. Because the affidavits are necessary to a review of Appellant's contention that the search warrants were not supported by probable cause, we are unable to entertain this issue on appeal. *Commonwealth v. Kleinicke*, 895 A.2d 562, 575 (Pa. Super. 2006).[6]

Lastly, Appellant asserts that the trial court erred in denying his motion *in limine* to preclude admission of "Internet searches that occurred on [Appellant's] cellular phone. . ." Appellant's Brief at 23–24. According to Appellant, "each of the pieces of evidence that were raised by the Commonwealth, and which the [trial c]ourt allowed to be entered, [was] so tenuous in [its] connecting [Appellant] to the actual homicide as to be highly prejudicial and without reasonable probative value." *Id.* at 24.

---

[6] Assuming that the trial court's factual summary of the affidavits is accurate, even if the affidavits were included in the record before us, we would conclude that Appellant's argument that the search warrants lacked probable cause does not entitle him to relief. In doing so, we would rely on the trial court's well-reasoned analysis and conclusion. Trial Court Pretrial Motions Opinion, 4/19/13, at 9–14.

The well-settled standard of review we apply when reviewing a trial court's ruling on a motion *in limine* is as follows:

> When reviewing the denial of a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review. It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Further, discretion is abused when the law is either overridden or misapplied.

***Commonwealth v. Hoover***, 107 A.3d 723, 729 (Pa. 2014) (internal citations, ellipsis, and quotation marks omitted).

The trial court addressed Appellant's challenge, as follows:

> The Appellant's Motion In *Limine* sought to preclude the Commonwealth from introducing specific Internet searches performed and/or responses given on the Appellant's cellular telephone on July 5, 2012 which were discovered as a result of the execution of a subpoena for the Appellant's cellular telephone records. The inquiries[10] were:
>
> > [10] The inquiries and responses are reproduced here verbatim.
>
> a) 7/5/2012 11:43:55 – "How long does it take for seamen to die"
>
> b) 7/5/2012 11:51:55 – "Given the most ideal conditions sperm may be able to survive between six and seven days in the uterus"
>
> c) 7/5/2012 11:53:48 – "Can people pull finger prints off a dead bloody body"

d) 7/5/2012  11:54:03 – "Fingerprints occur when the natural secretions of the skin are deposited on a surface through fingertip contact"

e) 7/5/2012  21:06:11 – "Can u be id or traced by blood?"

f) 7/5/2012  21:06:32 – "Yes; THC is detectable in the blood for 2-3 days after infrequent use, or up to 2 weeks in the blood of a frequent user"

g) 7/5/2012 21:07:44 – "can cops find you just by blood??"

h) 7/5/2012 21:08:02 – "80ish% of people with herpes do not know why then even have it.  There is a specific blood test to find out, but the health departments don't do this"

A Motion in *Limine* Hearing was held immediately before the trial began on August 13, 2013.  At that time, counsel for the Appellant argued that the evidence highlighted above was merely cumulative and inflammatory.   The Commonwealth argued that the texts and searches were part of [the] timeline of the crime and demonstrated that Appellant's state of mind at the time he performed those searches and/or received the responses.   Based on the totality of the circumstances, the [c]ourt permitted the Commonwealth to utilize the evidence at trial.[11]

> [11]    The Commonwealth introduced this evidence through Avram Polensky, the Custodian of Records for Verizon Wireless, during its case-in-chief.  [N.T., 8/14/13, at 258–281]

* * *

The [c]ourt does not believe that permitting the Commonwealth to utilize the evidence constituted an abuse of discretion.  The Court agreed with the Commonwealth that the Internet searches performed on the cellular telephone of the Appellant were probative of his state of mind in the hours surrounding the disappearance and ultimate discovery of the victim.   Further, the time-stamp indicated on the records provided a timeline of the incident and [was] not "merely cumulative" as suggested by counsel for the Appellant.  Based

on the totality of the circumstances, the [c]ourt did not err in allowing the Commonwealth to utilize the cellular telephone search evidence at trial.

Trial Court Rule 1925(a) Opinion, 12/18/14, at 31–32; N.T., 8/14/13, at 262–275 and Commonwealth's Exhibit 72.

Upon review, we agree with the trial court that the cellular evidence provided a timeline of events after the initial assault of the victim and before discovery of the victim's body. Additionally, when viewed in the context of Appellant's conduct toward the victim, the cellular evidence was not tenuous; it provided insight as to Appellant's state of mind in the hours following his initial attack on the victim. The jury could reasonably infer from the content of the cellular evidence that Appellant was concerned about inculpatory evidence being recovered from the victim, *i.e.*, semen, blood, fingerprints. Nor was the cellular evidence merely cumulative; it provided the jury with a temporal and physical nexus between the condition of the victim's body and Appellant's intention and attempt to conceal or destroy evidence of his involvement in the victim's death. We discern no manifest unreasonableness, partiality, prejudice, bias, or ill-will, overriding or misapplication of the law, or such lack of support for the trial court's ruling so as to be clearly erroneous. *Hoover*, 107 A.3d at 729. Thus, we conclude that the trial court did not abuse its discretion in denying Appellant's motion *in limine*.

Appellant's issues warrant no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2016